Arnold S. KAYE and Sanford Grossbart, Appellants,

v.

May SPACH, Trustee, Appellee.

No. 18994.

United States Court of Appeals Fifth Circuit.

April 13, 1962.

Rehearing Denied May 22, 1962.

Sidney T. Schell, Arnold S. Kaye, Schell, Kaye & Nodvin, Atlanta, Ga., for appellants.

Robert R. Frank, Miami Beach, Fla., Joe W. Gerstein, Atlanta, Ga., Frank & Weston, Miami Beach, Fla., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and BROWN, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal by Arnold Kaye, a lawyer, and Sanford Grossbart, his client, from an order of the trial court adjudging them in contempt of court by reason of their conduct in proceedings of the bankruptcy of one Robert L. Strauss.

The proceedings during which the attempt citation and conviction issued were ancillary proceedings in the bankruptcy of Strauss which was pending in the Southern District of Florida. They were part of a Section 21, sub. a, 11 U.S.C.A. § 44, sub. a, investigation "concerning the acts, conduct, or property of [the] bankrupt." May Spach, the Trustee, represented by counsel, sought to examine Grossbart and sought an opportunity to see books belonging to Grossbart and Grossbart Jewelers, a corporation, purportedly in order to ascertain whether there had been any improper transfers of assets from the bankrupt's estate to that of Grossbart or his interests, or whether there had been any preferences or other impermissible relations between the parties. In pursuit of this effort the Trustee caused a subpoena duces tecum to be issued calling on Grossbart to produce the corporate records. Grossbart, through his attorney, moved to quash the subpoena on the ground that they contended the records contained no entries disclosing any transactions with the bankrupt, either directly or indirectly. To counter this motion, the Trustee's counsel produced several witnesses who testified to certain dealings between Grossbart or his jewelry company and the Bankrupt Strauss, or his wife. Included in this evidence was testimony that a corporation, which shared the ownership with Grossbart of Grossbart Jewelers, had acquired its stock in Grossbart Jewelers from Strauss's wife. Included also is testimony that Grossbart had borrowed $7,000 from Mrs. Strauss, which transaction was handled by Strauss, and that the note for this $7,000 was actually delivered by Grossbart to Strauss. Grossbart testified that this note was later exchanged by Mrs. Strauss for stock (apparently 51%) in Grossbart Jewelers, the corporation whose books and records are here in issue. Before bankruptcy she had transferred this stock to another corporation. Furthermore Grossbart testified that a few months before bankruptcy he had borrowed several smaller amounts from Strauss, that certain amounts had been paid to Strauss and he answered in the affirmative when asked whether "the books and records of Grossbart Jewelers reflect when these moneys were repaid." The Referee and the trial court both found that there was ample evidence warranting an order by the Referee directing that Grossbart's books of account be submitted to the Trustee in order for her to have an opportunity to call to the attention of the Referee such matters as might be relevant upon the interrogation of Grossbart in the Section 21, sub. a proceeding.

The Referee entered an order directing Grossbart to submit the books to the Trustee through her counsel for examination. The following colloquy took place:

"Mr. Kaye: My client tells me that these records are confidential records concerning his sources of supply people from whom he has borrowed money and other highly personal communications and confidential records which would be detrimental and injurious to him for anybody to have access to other than himself.

"But there is no record, he tells me, in any of these books of any transactions with Mr. Robert L. Strauss directy or indirectly.

"For this reason, Your Honor, we are declining to submit to opposing counsel for his examination of the documents and the records which I have just identified. But I will restate once more that if the Court should so direct and is willing, we will make the court a repository of these records for its examination as to the truthfulness of the facts which I have represented on behalf of my client. And we have them all here and they are all available for the Court's examination or inspection.

"The Court: Mr. Kaye, I was not appointed by this Court as a depository. The Clerk is a deposi-

tory. I was appointed to conduct such judicial inquiries and hearings as prescribed by the law. This proceeding is a proceeding to take evidence. I have no recourse, I don't believe, but to direct this witness, Mr. Grossbart, to produce those records and to testify and answer any questions asked him which are proper.

"And I now so direct you to do that, Mr. Grossbart.

"Mr. Kaye: And I have directed my client not to answer the questions, Your Honor.

"The Court: Have you declined to do that, Mr. Grossbart? Now, he's the one that has to make the decision, not you, Mr. Kaye.

"Mr. Kaye: All right, sir.

"The Witness: On advice of counsel, yes.

"The Court: Well, I will certify the same thing that I have certified in the case of Mr. Karp.

"You understand what that is, do you, Mr. Grossbart? You will be certified to the Court whether the Court wants to deal with you for contempt or not.

"The Witness: Yes, sir."

Thereafter the Referee certified the record to the District Court for a ruling by the court as to whether Grossbart and Kaye should be held in contempt of court. As a preliminary to its decision, the trial court made the following comments:

"(1) One of the alleged acts of contempt charged against both respondents was the failure of witness Grossbart upon advise of said attorney to produce in evidence 'books of this witness * * * kept by a company affiliated or connected with the bankrupt.'

"The reason assigned by the witness for refusal to produce the books in Court, where they could be inspected by counsel for the Trustee, was that the books allegedly contained privileged matters pertaining to the business and upon the further ground that the transactions contained in the books and records did not pertain to Robert L. Strauss, the bankrupt.

"It appears from the record that the Referee explained to respondents that he, the Referee, was not able to take the records, search them, and determine which of the entries might or might not be material, and the Referee gave the witness opportunity to designate the items which the witness contended were immaterial, which the witness did not do.

"Sufficient evidence was adduced before the Referee to show that there were a number of transactions in fact had between the witness Grossbart and the bankrupt Strauss, or corporations with which they were identified sufficient to render it probable that the books and records would contain material evidence.

"It does not appear that the books contained any information which was privileged under the law, nor does it even appear that there was any effort made by respondents, to select the items contained in the records which were allegedly business secrets, and therefore production of the books limited only to the Referee himself would have been of no benefit to counsel who sought their production, and such procedure would have rendered impossible the examination of the witness concerning the entries in the books.

"Frequently referees, judges and others acting in a judicial capacity will, regardless of legal requirements, cooperate with parties and witnesses in the matter of keeping secret their records even where the records are not clothed with any privilege under the law. Such protection however, can only be given where there is complete cooperation with the parties seeking the same. It is arbitrary and unreasonable,

however, for respondents after being ordered by the Referee to produce records, to offer only to produce them for the perusal of the Referee and not for counsel, upon broad allegations that the contents of the records are immaterial and contain business secrets. The foregoing practice if permitted would obstruct the processes of the Courts in seeking to obtain the truth in all matters of this kind, as in fact the tactics of respondents have obstructed the processes in the instant case.

"This Court might be inclined to deal leniently with the aforesaid acts of the respondents did it not appear that there was definitely an intent and purpose upon the part of respondents in connection with these records, and in connection with other witnesses, as shown by the transcript to obstruct the investigations made by the Referee and to induce the witnesses to withhold all information possible."

 Other acts of an obstructionist nature were charged by the Referee against Kaye individually, and these were adverted to by the trial court in its determination that Kaye was guilty as charged. Because, however, we find that the flat refusal of the lawyer and the witness to comply with the court's order as to the corporate records, fully justified the trial court's judgment of contempt, we do not consider it necessary to consider these other matters.

Appellants contend here that their conduct in refusing to comply with the Referee's order to make the books available to the Trustee in bankruptcy was fully justified by a recent decision of this Court, Herron v. Blackford, 5 Cir., 264 F.2d 723. In that case there was in dispute the question whether a third party witness in a Section 21, sub. a hearing should be required to submit to the trustee and his counsel copies of corporate minutes consisting only of eighteen pages, wherein it was stated by the objecting party that the minutes were silent as to any transactions with the bankrupt. In deciding that the trial court in that case should have itself examined the eighteen pages of corporate minutes, this Court said:

"The court is required also to exercise discrimination in determining the portions of writings which are reasonably relevant and material to such issues. The performance of this duty involves examination of the writings to the end that only so much thereof may be held within the boundaries of the subpoena as satisfy these limitations."

The Court then further said:

"The task to be performed in this case by the district judge is not a hard one."

The opinion then contained a footnote stating, "Our reading of the eighteen pages transmitted under seal to us—cursory because the primary duty and discretion belonged to the court below—reveals that the election of officers is mentioned at three places, the bankrupt corporation is mentioned in one place, and no reference is made to the two Schutter corporations."

No such situation was present in the bankruptcy court here as was referred to in the above case. Here there were some three or four thousand pages of ledger sheets and financial records. Grossbart had commenced by swearing that there was no reflection in the records of any dealings with the bankrupt or any one connected with him directly or indirectly. He later, however, admitted, contrary to what he had previously sworn, that there were some such entries. Other witnesses also testified as to transactions between the parties or persons associated closely with them that would have normally appeared on the corporate books that were in question. The third party witness and his lawyer did not undertake to find these parts of the record and show them to the court or counsel, but simply stood upon their original claim that there were no such entries, that the books were all irrelevant, and offered simply to toss them on

the desk of the Referee and leave it up to him to determine what, if anything, was relevant to the investigation.

█ We think there is nothing in what is said in the opinion in the Herron case quoted above that prevents our finding that under the circumstances before the Referee here, he had strictly complied with his duty of ascertaining whether these particular documents and journal pages should be submitted to the Trustee and her counsel for examination. We think that the duty of "examination of the writings," referred to in the Herron opinion, was fully met when the Referee, with the physical documents before him, heard Grossbart admit that the bankrupt Strauss had negotiated a loan of $7,000 by Grossbart from Mrs. Strauss, for which the note was delivered to Strauss, and further heard Grossbart's testimony that this note held by Mrs. Strauss had later been paid off by exchanging it for stock (apparently 51%) of Grossbart Jewelers, with whose books we are here concerned, and then further heard Grossbart admit that "the books and records of Grossbart Jewelers reflect when [several small loans from Grossbart himself] were repaid." These admissions by Grossbart, without his making any attempt to point to these entries in the records, authorized the Referee in requiring that the records be turned over to the Trustee for examination.

█ We think that the principle announced in the Herron case should not be extended beyond the facts of that case. Where, as here, it is undisputed that there are entries in books or records of the third party witness relevant to the Section 21, sub. a investigation, it is not the duty of the Referee then to make the initial analysis in order to ascertain just what is and what is not relevant.

The whole adversary nature of litigation can be maintained only if the party whose duty it is to serve his client is permitted to call to the attention of the judge or referee, as the case may be, points which he deems to be relevant based upon his study and understanding of his client's case. Here the referee would become something other than an arbiter or judge if he were put in the position of having to construct a theory by which Grossbart's records might be considered relevant and then go forward with seeking information from the several thousand pages of the records to sustain his theory. The construction of such a theory and the search for evidence to support the theory are matters normally addressed to counsel rather than to the judge.

We conclude, therefore, that the order of the Referee was a lawful one, which it was the duty of both appellants to obey. Their refusal to do so is an adequate basis for the judgment of contempt issued by the trial court.

The judgment is, therefore, affirmed as to both appellants.

BROWN, Circuit Judge (concurring).

I concur fully in the opinion and decision of the Court including the articulated distinction between this record and that presented in Herron v. Blackford, 5 Cir., 1959, 264 F.2d 723, and the necessity that that case be carefully confined to its own facts. Consideration of the present case convinces me that the very serious doubts I entertained, but there submerged, as one of the Judges participating and joining in Herron, were well grounded. I now think the Herron case was wrongly decided.

CAMERON, Circuit Judge (dissenting).

The basic question presented by this confusing record is whether the court below was justified in adjudging the appellant, Sanford Grossbart, and his attorney, Arnold S. Kaye, guilty of civil contempt for refusing to comply with a verbal order of the Referee in Bankruptcy to turn over to the Trustee and her attorney the books and records (consisting of some three or four thousand pages) of Grossbart Jewelers, Inc. This corporation was engaged in the jewelry business in Atlanta, Georgia. The pro-

ceeding was ancillary to an involuntary bankruptcy proceeding against one Strauss in Miami, Florida.

Appellant Grossbart was served with a subpoena duces tecum as an individual to bring before the Referee in Atlanta, Georgia these corporate records of which he was custodian. He brought the records and presented them to the Referee. His attorney, Kaye, offered, on three or more occasions, to turn over all of the books to the Referee, but he refused to turn them over to the Trustee in Bankruptcy and her attorney for their unchaperoned examination. The Referee would not accept this proffer of the books, stating that he did not feel that it was his function to examine books, but that he was commissioned rather to hear evidence; and he stated that he would certify to the District Court for a contempt hearing, the refusal to turn the books over unconditionally to the Trustee. The District Court, acting upon the certificate and briefs, agreed with the Referee and sentenced both Grossbart and his attorney, Kaye, for contempt. I think the court committed error in so doing.

## I.

In offering to turn over the books for the examination of the Referee, the appellants were proceeding in specific conformity with our recent decision in Herron et al. v. Blackford, Trustee in Bankruptcy, 5 Cir., 1959, 264 F.2d 723. I think that appellants were justified in following that opinion. Appellant Grossbart was examined as a witness by the attorney for the Trustee, and he testified to something like a half dozen transactions between him or the corporation and the bankrupt Strauss; and in one or more instances he located the original cancelled checks or other papers covering those transactions and delivered them to the Trustee and they were offered in evidence.

He testified that he was not very familiar with the books, but he gave the name of the bookkeeper who was familiar with them. Presumably she was available to the Referee and her attendance could have been procured by subpoena. No effort was made to do this. Clearly if she had been brought before the Referee and had testified to transactions between Grossbart and the bankrupt, or possibly the corporation and the bankrupt, she could have been called upon to locate those transactions as recorded in the books of the corporation.[1] But no portions of the record could, under the law, have been ordered turned over to the Trustee or her attorney until the Referee had examined them and had determined in advance that such records were relevant and were subject to compulsory order of submission to the Trustee. This is the rule announced in Herron, and no contrary authority is referred to in the majority opinion. It is not sufficient to say that Herron is applicable only when the duty of prior examination by the referee or the court is a simple or easy one. Protection of private property rights and of the free enterprise system cannot be made to depend upon the convenience of judicial officers who are called upon to consider such matters.

As pointed out fully in Herron, the statutes regulating bankruptcy practice, including also the regulations, provide that the Federal Rules of Civil Procedure are applicable in bankruptcy hearings. We quoted in Herron (264 F.2d p. 725) the general rule covering situations such as this as it is set forth in 5 Moore's Federal Practice, Second Edition, page 1719.

I have been unable to find any order as broad and unlimited as this one which has been approved by any court. Under F.R.Civ.P., even the books and records of a litigant are available to his adversary only for good cause shown. Rule 34, F.R.Civ.P., 28 U.S.C.A. The turning

---

1. This is not free from doubt, because Grossbart was subpoenaed as an individual and it was doubtful if the corporate records were really properly before the court. In view of their proffer to the Referee, however, this point will not be belabored.

over of books and records of a third party to an adversary litigant for his unlimited examination is, as far as I can find, wholly without sanction under the Federal Rules. No authority now appears for such action beyond the *ipse dixit* of the majority opinion.

## II.

In Volume 2, Collier on Bankrupcty, 14th Edition, § 23.10, pp. 533–534, it is stated:

"One of the more frequent forms of the exercise of summary jurisdiction is the issuance of an order to turn over property or its proceeds to the supervision and control of the bankruptcy court and its officers, and is commonly called a 'turn over' order. Such an order may apply to any kind of property of the bankrupt estate [Note 2. Thus, for example, a stock exchange seat may be ordered transferred and the proceeds turned over * * *; or more commonly, books, documents or papers of account * * *], and will require the person affected to turn over the property in his possession or under his control to the receiver or trustee. The bankruptcy court has power to cause the assets of the bankrupt to be collected, and may take such orders as are necessary to effect that result, subject to the requirement, however, that a plenary action must be taken where the circumstances demand it * * *"

Without question, the books which lay at the base of these contempt proceedings were the books of a bona fide corporation, which was separate and distinct from the bankrupt. Its business was conducted in Georgia while the bankrupt was a resident of Florida, and the two were separated by several hundred miles. The Referee was engaged in a commendable effort to turn up property of the bankrupt, and Grossbart and the corporation he operated were suspected of being in possession of property to which the Trustee in Bankruptcy might have some claim. But this effort, legitimate as it may be, was required to be conducted in a way consonant with substantive law and the rules of procedure.

The attorney for the Trustee had, as shown in the majority opinion, produced evidence that the corporation owned some of the stock in Grossbart Jewelers, which it had acquired from the bankrupt's wife; that Grossbart, individually, had borrowed $7,000 from her, which Grossbart delivered to Strauss, as the result of which Mrs. Strauss acquired some stock in Grossbart Jewelers, which she later transferred to another corporation; and that Grossbart had borrowed other small amounts from the bankrupt. This was competent proof and if followed by examination of the bookkeeper of Grossbart Jewelers and by other witnesses, might have made competent limited portions of the voluminous records produced to the Referee in response to the subpoena duces tecum.

The proof was not strong, but it was sufficient to engender in the Trustee a desire to get a long look at the corporation's books. If he had proceeded legally, it may be that this right would have been given to him; although, in my judgment, the proof so far adduced in this record is not of the kind or character which standing alone would produce such a result. Mr. Chief Justice Taft rendered a decision involving bankruptcy proceedings such as this one in Oriel et al. v. Russell, Trustee and a companion case, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419. Oriel, the bankrupt, had been committed for contempt "in failing to deliver books and property to their trustees in bankruptcy as required by orders of the court." Concerning the character and quantity of proof necessary to sustain an order that books be turned over to the trustee, this was written (Pp. 361–362, 49 S.Ct. pp. 173, 174):

"In the Oriel case, the order, the breach of which led to the commitment, was against Oriel and Confino, directing them to turn over to their trustee in bankruptcy their books for the year 1925. * * *

"We think a proceeding for a turnover order in bankruptcy is one the right to which should be supported by clear and convincing evidence. The charge upon which the order is asked is that the bankrupt, having possession of property which he knows should have been delivered by him to the trustees, refuses to comply with his obligation in this regard. It is a charge equivalent to one of fraud, and must be established by the same kind of evidence required in a case of fraud in a court of equity. A mere preponderance of evidence in such a case is not enough. The proceeding is one in which coercive methods by imprisonment are probable and are foreshadowed. The Referee and the Court in passing on the issue under such a turnover motion should therefore require clear evidence of the justice of such an order before it is made. * * *"

If, therefore, the order to turn the books over to the Trustee for examination had been made against the bankrupt himself, it is doubtful if the proof was sufficient for the issuance of such an order. *A fortiori* the evidence was not sufficient to require an outsider operating a separate and distinct business, even though a business having relationship with the bankrupt, to surrender his books to the Trustee.

### III.

I do not think, moreover, that the Referee had jurisdiction to order the books turned over to the Trustee in a summary proceeding where, as here, such an action was not consented to but was resisted so vigorously that the impatience of the Referee was patently raised to a considerable degree. The books were the property of a third person, and the bankruptcy court had no possession of them, and the possession claimed by the appellant Grossbart was in no sense colorable. This Court has, in a series of cases participated in at least twice by each member of this panel, made clear that under such circumstances, the surrender of property of any character to the trustee may not be compelled in a summary proceeding.[2] A quotation from the headnote in Fox Jewelry Co., supra (264 F.2d 720), will serve to epitomize the holding of these cases:

"A corporation appealed from a turnover order issued against it by the United States District Court * * *. The Court of Appeals, * * * held that fact that control of bankrupt and corporation against which turnover order was directed existed by a one man stockholder and president of each, fact that they acted together, and fact that purchasing of their stock of goods were all done by the same man, was not determinative of the question of whether the corporations were, in fact, two corporations or simply one, with possession of one the possession of the other, and therefore, there was no basis for exercise of summary jurisdiction, although there might be ample basis for a finding in a plenary proceeding that the bankrupt was imposed upon by corporation subjected to the turnover order."

Maule Industries, supra, was cited as discussing the philosophy and theory of such summary jurisdiction and the reasons which deny such asserted jurisdiction. The action of the Referee in this case was ostensibly directed towards uncovering sufficient connection between Grossbart, Inc. and the bankrupt to justify subjecting Grossbart's assets to the bankruptcy proceeding. It is, as demonstrated by those cases, of great importance that such drastic action be taken only upon observance of all legal requirements.

2. Maule Industries v. Gerstel, 5 Cir., 1956, 232 F.2d 294; Nicholas, Trustee v. Cohn, Trustee, 5 Cir., 1958, 255 F.2d 301; Fox Jewelry Co. v. Lee, 5 Cir., 1959, 264 F.2d 720; Feldser v. Lee, 5 Cir., 1959, 264 F.2d 721; and Jackson v. Sports Company of Texas, Inc., 5 Cir., 1960, 278 F.2d 716.

## IV.

Treating of the general subject of "production of Books and Papers Upon Examination," Collier on Bankrutcy, Volume 2, pp. 294–296, quotes at length, in the footnotes, from two decisions of the Court of Appeals for the Third Circuit [3] language confirming that the foregoing authorities apply to a turnover order covering books and records, as well as one covering other forms of property. (And, cf. Oriel et al. v. Russell, Trustee, supra.) In the former case, In re Fox, D.C., 16 F.Supp. 950, the district judge had before him on review the order of the referee in bankruptcy directing, under strict safeguards, delivery to the trustee in bankruptcy of the books of account of the All Continent Corporation. There was strong proof of the identity of the bankrupt and the corporation. In entering his order, the district judge used these words:

"I am satisfied that the trustee is entitled to have from the books [of All Continent] any information which may be relevant to the present inquiry. What is relevant is primarily to be passed upon in the judicial discretion of the referee.

"I cannot agree with the referee's order requiring the complete delivery of the books to the trustee for a period of six weeks. I believe the books and accounts should be deposited in some secure neutral place —probably in the safe deposit vaults of some bank—to be examined and audited in said building by an accountant selected by the trustee or referee, said accountant to have no responsibility to any of the creditors of said bankrupt. The examination of the books, etc., should be in the presence of a representative of All Continent Corporation and Mrs. Fox, if they desire to have such representatives present, upon reasonable notice which should be given

in all instances when books, etc., are to be examined and audited."

Even as thus safeguarded, the Third Circuit Court of Appeals would not permit All Continent's books to be turned over to the trustee. Its language (96 F.2d 21–22) spells out a standard which is not questioned by any case cited by Collier, and certainly by none appearing in the majority opinion:

"In granting the trustee's request, the referee said: 'I cannot find any case in which the exact question here involved has been directly raised and passed upon by our courts.'

"He thought, however, that he had power under section 21a of the act to allow the examination of the books of the All Continent Corporation in accordance with the prayer of the petition. Under the authority of Looschen Land & Building Company et al. v. Milson, 3 Cir., 266 F. 359, we do not think he had such power. The All Continent Corporation *claims to be an adverse party in the bankruptcy proceedings and that the title to the books and other property is in it and not in the bankrupt. If such be the fact the referee may not have the books surrendered to the trustee and examined, as though they belonged to the bankrupt.* Whether or not the books are in fact the property of the bankrupt and not of the All Continent Corporation has not been determined and under the authority of the Looschen Case, cited above, that question must be determined by a plenary suit. Until it has been determined the trustee is not entitled to the books under the facts in this case. * * *

"But we know of no rule of law requiring the delivery of the appellant's books to the trustee so that he may examine the transactions be-

3. In re Fox, All Continent Corp. et al. v. Steelman, 3 Cir., 96 F.2d 20, certiorari granted 304 U.S. 554, 58 S.Ct. 1040, 82 L.Ed. 1524, certiorari dismissed, 305 U.S.

665, 59 S.Ct. 247, 83 L.Ed. 431, reversing D.C., 16 F.Supp. 950; and In Re Fox, Leitstein v. Capital Co., 3 Cir., 96 F.2d 23.

tween appellant and others having no interest in, or connection with, the bankrupt. Neither do we know of any rule of law which permits counsel to obtain indirectly the same result by having a witness read into evidence from the books the record of a transaction with which the bankrupt had no connection. Of course, this could be done *if it were established that the appellant belonged to the bankrupt and was simply his alter ego,* but this could be established only by a plenary suit. *The error of the referee was the assumption that this was a fact* and then proceeding as though the fact has been established. *Until this fact had been established the trustee did not have the right to possession of the appellant's books.* What the *trustee could not do could not be done by his accountants or counsel nor by counsel for creditors."* [Emphasis added.]

Much along the same line is said in the other case reported in 96 F.2d on pages 25 and 26, but the foregoing is sufficient, I think, to establish that the order here entered by the Referee was beyond his powers and was void, and the appellants were not required to obey it. It follows that the court below was without jurisdiction to adjudge appellants guilty of contempt of court for violating the void order.

The hearings before the Referee were not conducted in language altogether chaste or diplomatic. The appellants were not alone in this transgression. It is pointed out that the appellants were not cooperative with the Referee. Wherever the fault for this may lie, they were merely insisting on the right to which, under the law, the client was entitled. The duty of an attorney to protect the interests of his client is an important one, not less important than that of the Referee. In exercising these rights the attorney and the client he represents should, in my opinion, have full protection. There are no short-cuts to liberty.

I think the learned trial judge was without power to punish the attorney and the client for contempt, and I respectfully dissent from the majority opinion holding otherwise.