Jean ADAMS and Z. A. Adams, Appellants,

v.

UNITED STATES of America, Appellee.

No. 19160.

United States Court of Appeals Fifth Circuit.

April 19, 1962.

Rehearing Denied May 30, 1962.

See also 287 F.2d 701.

S. Gunter Toney, Tallahassee, Fla., for appellants.

C. W. Eggart, Jr., Acting U. S. Atty., Pensacola, Fla., R. W. Ervin, III, Asst. U. S. Atty., Tallahassee, Fla., for appellee.

Before TUTTLE, Chief Judge, and BROWN and BELL, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from the denial by the trial court in a Section 2255 proceeding of a motion to set aside a verdict and sentence of the two appellants who were convicted of perjury in connection with a trial in which Z. A. Adams had previously been indicted and tried for a liquor violation. The ground of the motion for setting aside the conviction and sentence under Section 2255 is that the trial judge who presided at the perjury trial as the result of which the appellants are now serving a sentence was, at the time of the trial of the liquor violation case, the United States Attorney for the district in which the earlier trial was being conducted. Thus it is that the perjury of which the jury in the present case found Adams and his wife guilty was committed during a trial commenced by the United States at a time when the District Judge, Honorable G. Harrold Carswell, was the duly named and acting United States Attorney.

On April 10, 1958, Z. A. Adams was put on trial for a liquor violation. In the course of the trial he testified to certain facts tending to establish an alibi. The jury was unable to agree and a mistrial was subsequently entered. On the date of this trial, Honorable G. Harrold Carswell was the duly qualified and acting United States Attorney for the Northern District of Florida, the District in which the trial took place. For the purpose of this appeal it may be conceded that Judge Carswell did not, at the time of the trial on April 10th, or thereafter prior to his becoming United States Judge, have any personal knowledge of the facts which subsequently caused the United States to seek and obtain an indictment against Adams and his wife for perjury committed on April 10th. Judge Carswell resigned as United States Attorney on April 17, 1958, and on April 18th, the following day, he was appointed United States District Judge. The file touching on an investigation into the testimony

given by Adams and his wife on the earlier trial was opened subsequent to April 18th. A report of investigation was made later and the case against Adams and his wife was presented to the Grand Jury in September, 1958, at which time the couple were both indicted for perjury committed on the April 10th trial.

The perjury indictment duly came on for trial before Judge Carswell; no motion was made by the defendants touching on Judge Carswell's prior occupancy of the position of United States Attorney; the matter was not brought to his attention, nor was it in any way alluded to during the trial which resulted in the conviction of Adams and his wife for perjury, and his being sentenced to three years and her being sentenced to one year in the penitentiary. An appeal from these convictions was duly prosecuted and the convictions were affirmed by this Court, and it was not until after the commencement of the sentences that counsel for the appellants filed the present motion to set aside the judgment of conviction and sentence on the ground that the trial judge was disqualified.

The disqualification statute, relied on by the appellants, is 28 U.S.C.A. § 455, which provides:

"Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein."

Appellants then point to the Section of the Code that makes it the duty of the United States Attorney "* * * to prosecute for all offenses against the United States * * *", 28 U.S.C.A., § 507, and counsel argues from this that the present prosecution for perjury is either a case in which Judge Carswell "has a substantial interest," or it is a case in which Judge Carswell "has been of counsel."

It may well be, as contended for by appellants, that if there has been an absolute technical disqualification, that is a disqualification that follows as a matter of course, a disqualification of a trial judge raised only after conviction and sentence might still be the basis of a motion to set aside a conviction under Section 2255, even though knowledge of the disqualification had been brought to the moving party and he had failed to bring it to the attention of the Court. In this connection see William Cramp & Sons Ship & Engine Building Co. v. International Curtiss Marine Turbine Co., 228 U.S. 645, 33 S.Ct. 722, 57 L.Ed. 1003, dealing with the statutory disqualification of an appellate judge. However that may be, we think it clear that a disqualification that depends upon proof that the judge had a "substantial interest" in the case before him could be waived by the parties if not made the basis of a timely motion. Here appellants seek to avoid the effect of a waiver by asserting in their motion:

"11. That the Petitioner, a resident of Bainbridge, Georgia, was not aware that the trial judge in Marianna Criminal Number 1467 was the United States Attorney on February 7, 1958 and on April 10, 1958 and *was not aware of the significance* of these facts during the trial of Marianna Criminal Number 1467 on December 7, 8, 1959 and/or during the period of her appeal subsequent thereto. The Petitioner first became aware of these *facts and significance thereof* on June 9, 1961." (Emphasis added.)

It will be noted that the only basis for appellants now asserting that they did not waive any possible disqualification of Judge Carswell at the time of the trial on December 7 and 8, 1959, is the statement that the petitioner "* * * was not aware of the *significance* of these facts during the trial of Marianna Criminal Number 1467 on December 7, 8, 1959 * * *" Of course, counsel for the appellants at the time of the perjury trial have not denied, and they doubtless

are unable to do so, that they knew of the fact that the judge then sitting had been United States Attorney at the time that the alleged perjury had been committed. There is no showing of any kind as to why counsel who represented the appellants on this trial did not at the time of trial challenge the right of the district judge to sit, other than the statement in the motion to set aside the judgment, prepared and signed by other counsel to the effect that *appellants* were not aware of the *significance* of the facts at the time of trial.

 It is plain, we think, that there was no absolute disqualification arising from the fact that the district judge had been "of counsel" in the perjury case before he became a district judge. This follows as a matter of course because this case was not commenced until months after he had resigned as United States Attorney. Thus it is clear, we think, that the judge was not disqualified on the ground of having "been of counsel in" the case which he was then trying.

 This, of course, does not dispose of the case, for the trial judge is still subject to disqualification if he had "a substantial interest" in the case which he was then trying. Although it is doubtless true that the term "substantial interest" normally refers to a pecuniary or beneficial interest of some kind, we construe the language broadly enough to comprehend the interest that any lawyer has in pushing his case to a successful conclusion. However, for this "interest" to arise, there must, as a minimum, be knowledge on behalf of the judge that the case is one that fits within the category. In the interest of making absolutely certain that the trial judge acts with complete impartiality, we might well hold, if such a record were before us, and we have little doubt but that the distinguished trial judge himself might have held, on such a record, that if he had known at the time he tried the Adams case for perjury Adams had previously been prosecuted by his office in the case in which the alleged perjury occurred, it would be appropriate for the district judge to bow out of the case. This would be such a case, we think, as Roberson v. United States, 5 Cir., 249 F. 2d 737, where this Court stated a test to be "a prior knowledge of the facts, or a prior interest in an issue arising out of them * * *." Here there was neither prior knowledge of the facts nor prior interest in an issue arising out of the fact, since it is taken as conceded on this record that Judge Carswell knew nothing about having had any prior connection with either Adams or his wife at the time he presided over the perjury trial as to which this motion is now presented.

Even if this were not the case, we do not think justice would be served were we to hold that the appellants' trial counsel who, so far as this record is concerned, had full knowledge of what is now charged to be the inconsistent position of the trial judge, could simply ignore this matter and fail to call it to the attention of the trial court until after conviction and sentence, and thus set the stage for a motion to set aside the conviction on the ground that the trial judge should have disqualified himself on the basis of facts of which he was not aware, or that his failure to do so nullifies the trial on a motion under Section 2255.

Affirmed.

JOHN R. BROWN, Circuit Judge (dissenting).

As the administration of justice requires not only that the proceedings be proper, but that they *appear* to be, and it is this policy which undergirds my approach, it is appropriate that I make explicit that which is otherwise taken for granted in Appellate Court opinions which, without the slightest disparagement of the integrity of the Judge, examine and then reverse the action of a Trial Judge. This is especially so where the fact of my dissenting might itself be thought by some to introduce a disturbing factor questioning the intrinsic fairness of the trial.

I join wholeheartedly in the majority's acceptance of the certainty that this perjury trial was fair and impartial in *fact*. Perhaps I appreciate this better than others since in writing for the Court in Adams v. United States, 5 Cir., 1961, 287 F.2d 701, I had to examine with painstaking detail that trial record. That and my close association with Judge Carswell—much of it while sitting with this Court—and the opportunity of seeing his work as it is exposed to appellate review, I am convinced that in fact this trial was in every respect fair and impartial. For he is that kind of man. He is that kind of Judge.

But that is not the question. The question is whether the admitted close connection with the very circumstances which gave rise to this conviction deprived the Judge presiding over that trial of the unqualified appearance of impartiality demanded by the disqualification statute, 28 U.S.C.A. § 455, and which codally reflects our fundamental notions of a fair trial before a neutral umpire.

Several things do seem unusual in the Court's approach. By italics, thrice used, it stresses greatly that the defendants claim merely that at the time of the perjury trial they did not know the *significance* of the facts concerning Judge Carswell's recent prior connection with the case. The implication seems to be that the defendants—untutored laymen—are charged not only with knowledge of the *facts* which their trial counsel, as local lawyers "doubtless" had,[1] but with the full understanding of the legal meaning, purpose and significance of such facts. While imputing wisdom of a kind we know is fictional to these non-lawyers, the Court gives the benefit of such unawareness to the Judge, a skilled and articulate lawyer. For the Court states, "Here there was neither prior knowledge of the facts nor prior interest in an issue arising out of the fact, since it is taken as conceded on this record that Judge Carswell knew nothing about having had any prior connection with either Adams or his wife at the time he presided over the perjury trial as to which this motion is now presented." 302 F.2d 310.

I am at a loss to understand how we conclude that Judge Carswell knew nothing of the prior activity—that is, was not aware of the "significance" of what he was doing. The indictment in the perjury trial charged expressly that the perjury took place on April 10, 1958, in a Federal trial at Marianna, Florida.[2]

1. The Court states: "Of course, counsel for the appellants at the time of the perjury trial have not denied, and they doubtless are unable to do so, that they knew of the fact that the judge then sitting had been the United States Attorney at the time that the alleged perjury had been committed." 302 F.2d 309.

2. The indictment charged that on April 10, 1958, in the trial for liquor violation held at Marianna, Northern District of Florida:

Count One
Defendant "Adams * * * did wilfully testify falsely * * * that on October 23, 1957, he attended a birthday party * * * in Bainbridge, Georgia, * * * whereas, in truth and in fact, * * * defendant Z. A. Adams * * * well knew that he did not attend said party * * *."

Count Two
Defendant "Adams * * * did wilfully testify falsely * * * that on October 23, 1957, on his way home from a birthday party * * * in Bainbridge, Georgia, he * * * picked up one George Adams * * * whereas, * * * Adams, then and there knew that he did not pick up the said George Adams and that he was swearing falsely."

Count Three
Defendant "Jean Adams * * * did wilfully testify falsely * * * that during October 1957, she and her husband attended a birthday party * * * in Bainbridge, Georgia * * * whereas, in truth and in fact, * * * Jean Adams * * * well knew that neither she nor her husband Z. A. Adams, attended said party * * *."

Count Four
Defendant "Jean Adams * * * did wilfully testify falsely * * * that on October 23, 1957, on their way home from a birthday party * * * in Bainbridge, Georgia, she and her husband * * * picked up one George Adams * * * whereas, * * * Jean Adams, * * * knew that she and her said husband did

312

Thus Judge Carswell; at the time he took the defendant's plea of not guilty, at the outset and during their entire trial, knew that at a *time* when he was United States Attorney, this criminal act took place within the *jurisdiction* committed to his personal and nondelegable responsibility.

But it was more than this. The crime of perjury was not constructed by actions which took place subsequent to Judge Carswell's accession to the bench. Hence the facts emphasized by the Court that the "file touching on an investigation into the testimony given by Adams and his wife" was opened subsequently, or that a "report of investigation was made later," 302 F.2d 308, which led to the indictment in September 1958 (and November 1959) are beside the point. The offense was perjury. The perjury was at the trial in which United States Attorney Carswell was the prosecutor —whether he was present or not. If perjury was committed, it was committed then and there, not elsewhere or later. What—and all—the subsequent investigation did was perhaps uncover some corroborative proof showing that on the liquor violation trial, the defendants' testimony was knowingly false.

Far from being something "new," i.e., a matter of which Judge Carswell had not "been of counsel," the very same fact was in dispute. For the perjury trial was but a playback (with additional legal sanctions) of the Government's case

in the liquor violation trial: Adams was present at the time the automobile carrying illegal whiskey was stopped and searched; he was not, as he and his witnesses testified, attending a birthday party many miles away.

Indeed, it was the unique similarity of the factual issues presented in the liquor violation trial and the perjury trial which required the extended opinion of this Court in its exposition of why the jury verdict of acquittal at a *second* liquor violation trial did not amount to res judicata concerning the perjury at the earlier trial. Adams v. United States, 5 Cir., 1961, 287 F.2d 701. Of course, as we there spelled out, the offense of perjury is distinct, but the legalistic issue, "did Adams swear falsely," required that the Government establish beyond a reasonable doubt that the testimony was untrue, and knowingly so.

But it was this controversy—where was Adams, at the moonshine automobile, or the birthday party?—which had also been at the core of the liquor trial. And on it, United States Attorney Carswell, by the demand of the statute, 28 U.S.C.A. § 507, the oath of his office, and his duty as an advocate, had taken sides. He—through the voice of his Assistant—was contending, as he properly could, that Adams was actively transporting moonshine and was not reveling at a distant party. His duty as the Government's advocate was to press this partisan view with all of the vigor, re-

not pick up the said George Adams * * *."

Count Five

Defendants * * * Z. A. Adams and Jean Adams * * * did wilfully * * procure and suborn * * * Virginia Alday Ezell * * *, to commit perjury * * * by inducing the said Virginia Alday Ezell to falsely swear * * * that on October 23, 1957, she and her husband, H. L. Ezell, had a birthday party at their home in Bainbridge, Georgia, and that * * * Z. A. Adams and Jean Adams, attended said party during all of the period between 6:30 P.M. and 11:30 o'clock P.M., whereas * * * the said Virginia Alday Ezell * * * knew that neither * * * Z. A. Adams

and Jean Adams, attended such party * * *."

Count Six

Defendants " * * * Z. A. Adams and Jean Adams * * * did wilfully * * by inducing * * * H. L. Ezell to commit perjury * * * by inducing * * H. L. Ezell to falsely swear * * * that on October 23, 1957, he and his wife, Virginia Alday Ezell, had a birthday party at their home in Bainbridge, Georgia, and that * * * Z. A. Adams and Jean Adams, attended said party during all of the period * * * whereas * * * H. L. Ezell * * * knew that neither * * * Z. A. Adams and Jean Adams attended such party * * *."

sourcefulness, and skill that honorable deportment of an intelligent conscientious, responsible counsel would permit.

It is probably true that lawyers, from discipline and training, have an intellectual capacity to view objectively that which they formerly maintained, personally or vicariously, as partisans. But our system does not work that way. Our system frees the person of such a new-made umpire of that awful responsibility. Doing so, it insures that the mind of the Judge, as the mind of the juror, has not been effected or even possibly influenced by former positions taken concerning the *very* transaction and issue upon which he must now pass.

Thus it was that the Honorable Harrold Carswell, as Judge Carswell, was required to pass on the sufficiency of the evidence (and all related problems) as to which in the role of United States Attorney Carswell, he had twice taken an advocate's position before a Grand and Petit Jury.[3]

Since the Court properly makes no effort to insulate the District Attorney from the official (and honorable) actions of his Assistants, its holding that Judge Carswell was not "of counsel" has to rest on the fact that this was not the same case "because this case was not commenced until months after he had resigned as United States Attorney." 302 F.2d 310. Besides being factually erroneous for the reasons I have summarized, this approach is too narrow, and alarmingly so. It tests it in terms of the identity of the case style, rather than the identity of the factual situation. United States v. Maher, D.Me., 1950, 88 F.Supp. 1007; United States v. Vasilick, 3 Cir., 1947, 160 F.2d 631.

When it comes to the question of "a substantial interest," I am in agreement with the Court that this should be construed "broadly enough to comprehend the interest that any lawyer has in push-

ing his case to a successful conclusion." 302 F.2d 310. This is not just a polite genuflection toward cherished professional habits. It is the very essence of our adversary system which works only when the role of each is carefully preserved. Kaye v. Spach, 5 Cir., 1962, 302 F.2d 298.

Indeed, once we reject—as it must be —the assumption that Judge Carswell did not "legally" know that the defendants had been prosecuted by his office in the case in which the perjury occurred, the Court itself states what the decision should be. This is spelled out both in plain words and in its reiteration of the same principles forecast by us in Roberson v. United States, 5 Cir., 1957, 249 F.2d 737. The Court states: "In the interest of making absolutely certain that the trial judge acts with complete impartiality, we might well hold, if such a record were before us, and we have little doubt but that the distinguished trial judge himself might have held, on such a record, that if he had known at the time he tried the Adams case for perjury Adams had previously been prosecuted by his office in the case in which the alleged perjury occurred, it would be appropriate for the district judge to bow out of the case." 302 F.2d 310.

This is an important declaration. It is so even though stated in conditionals and in permissive terms closely identified with voluntary action by a trial Judge in such a situation. It is precisely because the effectuation of the policy of the really neutral umpire depends largely on the self-generated voluntary acts of a Judge in recusing himself where there is a shadow of possible disqualification that I think it was fundamental error for Judge Carswell to have presided at the trial. I think this has been compounded by his having determined the § 2255 attack on his disqualification. The statute, 28 U.S.C.A. § 455, no longer, as it did under

[3.] The original indictment charging violation of the Internal Revenue Laws concerning moonshine whiskey was on February 7, 1958. The trial of those charges resulting in a mistrial was on April 10, 1958. This was the trial in which it was later found that perjury and subornation of perjury was committed. Judge Carswell qualified and assumed his duties as Judge on April 18, 1958.

prior acts, leaves this to the "application by either party."[4]

The Judge will, and must, be in most cases his own enlightened conscience. And the judiciary, through its organized voice, resists contemporary proposals which would put this in the hands of parties or counsel and automatically relieve the questioned Judge of the power or the duty to weigh this serious matter of his own disqualification.[5] Left so much as it should be to the Judge, we should be careful that in laying down standards which serve in this area as an expression of a living ideal, our actions in acquiescing in a *fait accompli* do not overpower our words.

Finally, I think the Court makes a too-easy and unarticulated disposition of the so-called waiver. It begins with an assumption (see note 1, supra) that the defense counsel at the perjury trial knew of this former activity of Judge Carswell. Doing so involves two things. First, it puts disqualification of a Judge not on the Judge where the statute places it, but on counsel. That represents a retreat to the former law (see note 4, supra). Next, it assumes that this is the kind of "right" which counsel can waive for a client in a casual manner. This Court has recognized, of course, that under our system so much is committed to counsel. In the absence of a substantial indication of misconduct amounting to a breach of duty to defend, we must, and do, hold defendants to the consequences of tactical or strategic actions taken by counsel, since the Judge ceases to be a Judge and becomes an advocate

when he weighs the wisdom of a particular course, or would undertake to prevent counsel from taking a given action. Gray v. Ellis, 5 Cir., 1958, 257 F.2d 159, cert. denied 358 U.S. 912, 79 S.Ct. 241, 3 L.Ed.2d 232; Kennedy v. United States, 5 Cir., 1958, 259 F.2d 883; Floyd v. United States, 5 Cir., 1958, 260 F.2d 910; Horne v. United States, 5 Cir., 1959, 264 F.2d 40; Georges v. United States, 5 Cir., 1959, 262 F.2d 426. At the same time we have recognized that there are some rights of so vital a nature that the record must give assurance that the waiver was that of the defendant acting after full professional advice from his counsel with at least some understanding of the significance of the course pursued or the right forsaken. Hence, before a defendant will be deemed to have waived objection to trial by a petit jury infected by an unconstitutional exclusion for race, the record must show that the defendant, not just his counsel, took the action, deliberately and after advice. United States ex rel. Goldsby v. Harpole, 5 Cir., 1959, 263 F. 2d 71, 79, 83.

Surely a trial by a Judge who not only *is* fair and impartial, but who meets the requirements of the statutory policy designed to assure impartiality and the appearance of it, is such a right, personal to the defendant, and which he alone may waive. It does not lie in counsel's power to determine whether the Judge is to be excused from the duty imposed on him for self-determination of his possible disqualification because of facts either known to him or of which he cannot es-

4. Former 28 U.S.C.A. § 24 prescribed that: "Whenever it appears that the judge of any district court is in any way concerned in interest in any suit pending therein, or has been of counsel * * * as to render it improper, in his opinion, for him to sit on the trial, it shall be his duty, *on application by either party*, to cause the fact to be entered on the records of the court; * * *." (Emphasis supplied) Upon that being done the matter was then to be submitted to, and acted upon, by the "senior circuit judge" of the Circuit. See In Re Fox West Coast Theatres, S.D.Cal., 1936, 25 F.Supp. 250;

Utz & Dunn Co. et al. v. Regulator Co. et al., 8 Cir., 1914, 213 F. 315; Rose v. United States, 4 Cir., 1924, 295 F. 687; Voltmann v. United Fruit Co., 2 Cir., 1945, 147 F.2d 514; Borough of Hasbrouck Heights, N. J., v. Agrios, D.N.J., 1935, 10 F.Supp. 371.

5. See Reports of the Proceedings of the Judicial Conference of the United States, Annual Report of the Director of the Administrative Office of the United States Courts, 1961, p. 68–69, regarding the proposed amendments to statutes on disqualification of a judge.

cape immediate accountability. Nor does it lie in counsel's power to determine for the accused that in his—the lawyer's—judgment a trial before such a Court is as good as one which meets the high demands of the law.

The stream of justice must be kept pure. Untruth contaminates it. Adams and all other perjurers must be vigilantly prosecuted and if guilty, convicted. But it is more important that Adams be tried and convicted by a Court presided over by a Judge as to whom it may not be said that in a prior day, in another role, through persons for whose acts he is accountable, he took positions which prejudge a critical issue now about to be tried.

I therefore respectfully dissent.