In re **GRAND JURY INVESTIGATION,**
Philip Charles Testa, Witness.

**Appeal of Philip Charles TESTA.**

No. 73-1796.

United States Court of Appeals,
Third Circuit.

Argued Sept. 26, 1973.

Decided Oct. 25, 1973.

---

5. By the 1966 Amendments to the Fair Labor Standards Act.

6. From Title 29 U.S.C. Sec. 207(c) to Title 29 U.S.C. Sec. 213(b)(15).

Robert F. Simone, Philadelphia, Pa., for appellant.

Robert E. J. Curran, U. S. Atty., Kenneth A. Bravo, Stephen Stein, Sp. Attys., Dept. of Justice, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This is an appeal from an order issued September 12, 1973 by Judge John

Morgan Davis of the District Court, Eastern District of Pennsylvania, which holds the appellant in civil contempt for refusing to answer questions before a grand jury after he had been given immunity under 18 U.S.C. §§ 6002, 6003 (Supp.1973). The order has committed him to prison without bail until he agrees to testify before the grand jury. An application for release on bail pending determination of this appeal was denied by this court on September 14, 1973.

The appellant raises several objections to the civil contempt order. His most substantial claims are: first, that the immunity order, issued August 22, 1973, is ineffective because the judge who issued it was not impartial and should have disqualified himself; and second, that the appellant had the right to refuse to answer the questions propounded because they were based on wiretaps by the government which were admittedly illegal. We have concluded that these claims are not meritorious and affirm the order of the district court.

The appellant appeared before the grand jury on August 22, 1973 and refused to answer all questions (other than his name and address) invoking his rights under the Fourth and Fifth Amendments of the Constitution. He was immediately brought before District Judge Louis C. Bechtle[1] who, pursuant to a petition of the government, signed an order granting him immunity. The appellant was then directed to make another appearance before the grand jury, where he once again refused, on constitutional grounds, to answer any questions other than his name and address. The government's successful petition for an order of civil contempt was brought before Judge Davis as a result of this second refusal to testify.

## I

The appellant's first contention is that the order of Judge Bechtle granting him immunity should be held ineffective, because the judge was not impartial. As a result, the appellant claims he was within his rights when he continued to refuse to answer the questions on constitutional grounds. This claim is based on the fact that prior to Judge Bechtle's appointment to the bench he was United States Attorney for the Eastern District of Pennsylvania. During his tenure, the office conducted several investigations of the appellant and brought at least one prosecution against him.

The statutory basis for disqualification is 28 U.S.C. § 455 (1970)[2] and under that section a federal judge must disqualify himself in any case in which he has been "of counsel". Included within the term "of counsel" is the United States Attorney for any criminal prosecution in his district. United States v. Amerine, 411 F.2d 1130, 1133 (6th Cir. 1969); United States v. Vasilick, 160 F.2d 631 (3d Cir. 1947). However, the clause is applicable only if the judge is asked to hear the *same case* in which he has been of counsel, Gravenmier v. United States, 469 F.2d 66 (9th Cir. 1972); United States v. Vasilick, *supra*, and that is not the situation before us now.

■ The earlier prosecution of the appellant and any investigations which were related to them are clearly different cases. Moreover, if any of the prior investigations to which appellant refers were unrelated to his earlier prosecutions, they did not result in any arrest or indictment during Judge Bechtle's

---

1. The judge previously assigned as Emergency Judge for the District Court, Eastern District of Pennsylvania, for the week of August 20, 1973.

2. The section reads as follows:
   "Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein."

tenure as United States Attorney (nor have they since). Therefore, they were not related to *any* "case" as that term is used in § 455. United States v. Wilson, 426 F.2d 268 (6th Cir. 1970). As a result, Judge Bechtle was never "of counsel" in this case and mandatory disqualification on this basis is not required.

█ Nor do we believe that the judge need necessarily have disqualified himself under the "substantial interest" clause of 28 U.S.C. § 455 (1970). First, this clause is concerned primarily with pecuniary and beneficial interest, United States v. Bell, 351 F.2d 868, 878 (6th Cir. 1965); Adams v. United States, 302 F.2d 307, 310 (5th Cir. 1962), so that at the outset it has only arguable relevance to Judge Bechtle's purported interest.

█ Second, the appellant contends no more than that Judge Bechtle was United States Attorney during a period in which he was prosecuted and investigated. He does not contend that, as a result, the Judge has a special interest in the outcome of this case. We agree with the Ninth Circuit that the mere fact that a judge was United States Attorney when an unrelated prosecution or investigation occurred does not by itself establish a "substantial interest" under § 455. Gravenmier v. United States, 469 F.2d 66 (9th Cir. 1972). We refuse to adopt such a per se, mandatory disqualification rule in this area.

█ Finally, we should point out that the only function performed in this case by Judge Bechtle was to issue the immunity order under 18 U.S.C. § 6003 (Supp.1973). Under the language of this section the judge is required to issue the order when it is properly requested by the United States Attorney. He is given no discretion to deny it. *See* Licata v. United States, 429 F.2d 1177, 1179 (9th Cir. 1970) (interpreting

18 U.S.C. § 2514, an analogous immunity statute). As a result, even if we were to assume that Judge Bechtle had a special interest in these proceedings, he could not in fact have affected them, given his purely ministerial function. We conclude that Judge Bechtle's refusal to disqualify himself does not require reversal.[3]

## II

The appellant's second contention is that he cannot be held in civil contempt for his failure to respond to the questions asked since they were based, in part, upon illegal wiretaps maintained by the government. Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2359, 33 L. Ed.2d 179 (1972). While the government admitted that it maintained a number of illegal wiretaps until July 1965, it went on to establish, to the satisfaction of the district court, that the questions were not based on these illegal wiretaps and that therefore they provided no basis for the appellant's refusal to testify, after he had been given immunity. The appellant contends that this holding is erroneous.

██ Once the government has admitted the existence of illegal wiretaps, it must establish, by a preponderance of the evidence,[4] "an independent basis, aside from the illegal surveillance, upon which to justify the questions propounded before the grand jury." In re Egan, 450 F.2d 199, 216 (3d Cir. 1972), aff'd sub nom. Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2359, 33 L.Ed.2d 179 (1972). In order to establish an "independent basis" here, the government introduced as evidence more recent, legal surveillance reports of the Federal Bureau of Investigation which it claims were the basis of the questions. Most of these surveillances took place in 1972 and 1973, the time period in which the

---

3. Even if disqualification was not required under 28 U.S.C. § 455, Judge Bechtle could have exercised his discretionary power and disqualified himself on his own initiative. However, since no prejudice in fact could have occurred, given his ministerial role, we

cannot say he abused his discretion in failing to do so.

4. United States v. Cole, 463 F.2d 163, 172 (2d Cir. 1972); United States v. Cohen, 358 F.Supp. 112, 118 (S.D.N.Y.1973).

events about which the appellant was questioned occurred, and most were physical sightings of the appellant meeting with various individuals. The government attorney in charge of the grand jury investigation also testified that he had not read the logs of the illegal wiretaps and that they had no effect on the questions asked the appellant. We believe this evidence was sufficient to permit the district court to find that the government had met its burden and established an "independent basis, apart from the illegal surveillance" for the questions asked.[5]

The appellant seeks to refute this demonstration of an "independent basis" by pointing out that the possibility of taint by the illegal wiretaps is not excluded by this evidence. He urges that the Federal Bureau of Investigation agents who carried out the legal surveillances may have themselves used the illegal material. However, the government's proof need not preclude every possibility of taint. *See* Bufalino v. Immigration and Naturalization Service, 473 F.2d 728, 734 (3d Cir. 1973). Indeed, as the Supreme Court has stated:

"Sophisticated argument may *prove* a causal connection between information obtained through illicit wire-tapping and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint." Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939) (emphasis added).

In the case before us, only the *possibility* of a causal connection between the illegal taps and the questions has been demonstrated by the appellant. Moreover, all of the questions asked related to specific events which occurred in 1972 and 1973, the period of time in which most of the legal surveillance of the appellant, relied on by the government, took place.[6] The illegal taps, by contrast, ended in 1965. As a result, the likelihood that the questions were tainted by the illegal taps is small; any taint which might exist is in all likelihood sufficiently attenuated; and therefore the possibility, raised by the appellant, that the Federal Bureau of Investigation agents used the illegal material does not persuasively refute the government's evidence. Therefore, the conclusion of the district court that there was no taint is entirely proper since it could reasonably have concluded that a preponderance of the evidence indicated an independent, legal basis for the questions.[7]

---

5. While we find that the district court's evidentiary determination was correct and affirm on that basis, we also note that 18 U. S.C. § 3504, enacted as part of the Organized Crime Control Act of 1970, has application to the factual situation presented here. The statute provides:

"(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—

\* \* \* \* \*

"(3) no claim shall be considered that evidence of an event is inadmissible on the ground that such evidence was obtained by the exploitation of an unlawful act occurring prior to June 19, 1968, if such event occurred more than five years after such allegedly unlawful act."

In this case the illegal surveillance ended in July 1965 and the interrogation of the witness related to 1972 and 1973 events. This being the case, the statute operates to preclude the claim of inadmissibility.

However, constitutional questions may be involved in the application of this section, *see*, Gelbard v. United States, 408 U.S. 41, 53–54 n. 11, 92 S.Ct. 2359, 33 L.Ed.2d 179 (1972); In Re Evans, 452 F.2d 1239, 1248 n. 32 (D.C.Cir. 1971). In addition, we do not have the benefit of the district court's view on these issues since it chose to rely solely on its evidentiary determination in deciding the case. As a result, we do not rely upon § 3504 as the basis for our decision in this case.

6. A much smaller amount of this legal surveillance occurred in 1970.

7. In this appeal, the appellant raises as a further objection the possibility that the subpoena which compelled him to appear before the grand jury was itself tainted by the illegal wiretaps. This assertion is based on the fact that the decision to subpoena was made by three government attorneys, and, as to two of them, no evidence was introduced to indicate whether or not they had used the illegal material.

The appellant also argues that the district court's finding of an independent basis for the questions must be reversed because Judge Davis refused to review the illegal material *in camera*. As a result, the appellant claims that an intelligent decision on the issue was impossible. This claim is without merit. While in some cases the district court may find it necessary to review the illegal wiretap material, there will undoubtedly be other cases where the weight of the evidence will establish an independent basis with sufficient clarity to permit a ruling without a review of the illegal material. The necessity for first-hand *in camera* inspection is properly left to the discretion of the district court. There was no abuse of that discretion here.

## III

Finally, the appellant makes the following contentions. First, he claims the government called him before the grand jury not to obtain information, but rather because they wished to harass and imprison him. Second, he claims that his right to be free from double jeopardy is violated, since he was cited for civil contempt in 1963 for failure to answer questions before another grand jury which, like this one, was investigating organized crime. Third, he contends the district court abused its discretion by finding him in civil contempt and imprisoning him. We have considered each of these claims and find they are without merit.

The order of the district court holding the appellant in civil contempt will be affirmed.

This possibility has no effect on our conclusion with regard to the claim that the questions were tainted. The allegation of a tainted subpoena is separate from the allegation of tainted questions and does nothing to reinforce or strengthen appellant's argument on the issue discussed in the text, *supra*.

Moreover, with regard to the question of a tainted subpoena itself, it is somewhat doubtful whether the appellant can raise it at all, since he seems to have waived this objection. He made no attempt either to quash the subpoena prior to his appearance, United States v. Seeger, 180 F.Supp. 467 (S.D.N.Y.1960), or to object to it after he had appeared before the grand jury but prior to the start of his substantive examination. However, even if this question is properly before us, we feel that the evidence which establishes an independent basis for the questions, demonstrates an adequate independent basis for the subpoena, as well.