Edward J. BARRY et al.,
Petitioners-Appellants,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 75–1659.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1975.

Decided Jan. 13, 1976.

Rehearing and Rehearing En Banc
Denied Feb. 24, 1976.

Kenneth N. Flaxman, Chicago, Ill., for petitioners-appellants.

Samuel K. Skinner, U. S. Atty., Daniel K. Webb, Asst. U. S. Atty., Chicago, Ill., for respondent-appellee.

Before FAIRCHILD, Chief Judge, ADAMS, Circuit Judge,* and CAMPBELL, Senior District Judge.**

ADAMS, Circuit Judge.

In this appeal, we are asked to decide whether the district judge who presided at the petitioners' criminal trial contravened the mandatory disqualification statute,[1] whether there was prosecutorial misconduct warranting reversal in connection with the judge's decision not to

recuse himself, and whether the scope of the proceedings held in the district court in this collateral attack on the convictions was improperly restricted.

## I.

The prosecutions that led to the petition for habeas corpus presently before us arose out of a pervasive scheme of extortion involving the vice squad of Chicago's 18th Police District.[2] Federal jurisdiction over the crimes, which consisted of periodic payoffs from bar and tavern owners to the defendant police officers, was obtained through a then-novel interpretation of the Hobbs Act.[3]

When the case was ready for trial, it was assigned to Judge William J. Bauer.[4] Because he had served from July 1970 until November 1971 as United States Attorney for the district in which the prosecution was brought, Judge Bauer requested that office to advise him of the date when the investigation underlying the case had begun. In response, he received an affidavit from James J. Annes, a Special Agent with the FBI, stating that the investigation had formally commenced in May 1972—several months after Judge Bauer had left the office of the U.S. Attorney. As a result of this information, Judge Bauer decided not to disqualify himself from presiding at the trial. The trial and convictions followed.

---

* The Honorable Arlin M. Adams, Circuit Judge of the United States Court of Appeals for the Third Circuit, is sitting by designation.

** The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. 28 U.S.C. § 455 (1970).

2. An exposition of the distressing factual background of the criminal conspiracy is presented in considerable detail in an opinion by Justice Tom Clark, sitting by designation, which affirmed the convictions. *United States v. Braasch*, 505 F.2d 139, 141–44 (7th Cir. 1974), *cert. denied sub nom. Barry v. United States*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975).

3. 18 U.S.C. § 1951 (1970). The contention that the shakedown racket did not affect interstate commerce, as required by the statute, was flatly rejected by this Court. *United States v. Braasch*, 505 F.2d 139, 147 (7th Cir. 1974), *cert. denied sub nom. Barry v. United States*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975). *See also United States v. DeMet*, 486 F.2d 816, 821–22 (7th Cir. 1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974).

4. Judge Bauer has subsequently been appointed to this Court.

After affirmance of the convictions by this Court,[5] petitions were filed under 28 U.S.C. § 2255. The district court granted the government's motion for summary judgment and denied relief. We affirm.

## II.

Petitioners have raised three primary arguments in this Court. The first is that under the circumstances here, the provisions of 28 U.S.C. § 455[6] required Judge Bauer to disqualify himself from presiding at the criminal trial. This is so, it is asserted, for two reasons. First, the policy decision to employ the Hobbs Act to combat the police extortion ring, a use to which it had not previously been put, was allegedly made by U.S. Attorney Bauer. It is maintained that this made him "of counsel" to the United States Government and also gave him a "substantial interest" in prosecutions that rely upon that theory; disqualification was thus required. Second, U.S. Attorney Bauer allegedly appeared before and encouraged the grand jury that indicted the members of the 18th District's vice squad. It is urged that such conduct also mandated disqualification under section 455.

The next contention set forth by petitioners is that when Judge Bauer asked the office of the U.S. Attorney the date when the investigation had begun, in order to determine whether disqualification was called for, the answer was an intentional misrepresentation of the facts. The petitioners assert that the investigation had in fact commenced during the tenure of U.S. Attorney Bauer, and that he did not disqualify

himself because he was improperly told it had begun after his appointment to the bench. The argument continues that the government was thus able, as a fruit of its alleged impropriety, to present its case to a judge who was already favorably disposed to its prosecutorial theory.

Finally, petitioners claim that their section 2255 action was invalidly restricted in the district court. They insist that discovery was unduly limited, and that the district court erroneously granted summary judgment to the government on the basis of conflicting affidavits. They further urge that although section 2255 requires a hearing unless "the motion and the files and records of the case conclusively show the prisoner is entitled to no relief," and although this was not conclusively shown, no hearing was granted them.

Meeting the claims advanced by the petitioners, the government contends, first, that this "case" did not get under way until the tenure of William Bauer as U.S. Attorney had ended. It further submits that the policy decision to use the Hobbs Act was not made by U.S. Attorney Bauer, and that even if it were, disqualification was not required. Finally, it is maintained that ample discovery was allowed; that the affidavits did not conflict in any material way; and that no hearing was required, since the claim raised by petitioners was not a substantial one.

## III.

■ Our analysis of the applicability of 28 U.S.C. § 455 in the circumstances present here leads to the conclusion that Judge Bauer's disqualification was not mandated by the statute.[7]

---

5. *United States v. Braasch*, 505 F.2d 139 (7th Cir. 1974), *cert. denied sub nom. Barry v. United States*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975).

6. 28 U.S.C. § 455 (1970) provides:
   Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party

or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.

7. The possibility that Judge Bauer's disqualification was mandated by § 455 was not raised until the § 2255 petition was filed in November 1974, more than 15 months after the trial began and 13 months after the verdicts of guilty were rendered by the jury. In similar circumstances, some courts have found a waiver of any § 455 objections. *See, e. g., Zovluck v.*

■ Section 455 refers only to particular relationships by the judge "in any case. . . ."[8] This limitation is a significant one. The two courts of appeals that have construed the phrase "in any case" have given it a rather strict meaning, one which we follow. In *United States v. Wilson*, 426 F.2d 268, 269 (6th Cir. 1970), the Sixth Circuit interpreted it as follows:

> "A 'case' does not, of course, necessarily come into being with the happening of the offense. The critical point for *mandatory* disqualification is, we think, the initiation of the prosecution. For purposes of 28 U.S.C. § 455, we believe that a 'case' begins with the first formal prosecutorial proceeding (arrest, complaint or indictment) which is designed to bring a named alleged offender before the court."

The Third Circuit has taken the same approach, holding that there is no criminal "case" when there has not yet been an "arrest or indictment. . . ." *In re Grand Jury Investigation*, 486 F.2d 1013, 1015–16 (3d Cir. 1973), *cert. denied sub nom. Testa v. United States*, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974).[9]

■ The affidavits filed in the district court in this proceeding show that no "case" against the petitioners existed until after Mr. Bauer had left the office of the U.S. Attorney. The affidavit by James J. Annes, the FBI Special Agent, averred that the investigation had not begun until May 1972, about five months after Judge Bauer had resigned as U.S. Attorney. This affidavit was undisputed. Petitioners proffered testimony from four individuals indicating that FBI agents had, in 1970 and 1971, asked questions of several persons about payoffs to policemen by tavern owners. But mere questioning of a few individuals does not meet the *Wilson* standard of attempting "to bring a *named* alleged defender before the court,"[10] nor does it constitute the formal opening of the prosecution required by both *Wilson*[11] and *Grand Jury*.[12] No other evidence

---

*United States*, 448 F.2d 339, 343 (2d Cir. 1971), *cert. denied*, 405 U.S. 1043, 92 S.Ct. 1327, 31 L.Ed.2d 585 (1972); *Adams v. United States*, 302 F.2d 307, 310 (5th Cir. 1962); *Ramirez v. United States*, 294 F.2d 277, 283 (9th Cir. 1961). It was particularly common for courts to find waiver before the statute was amended in 1948. Until that year, disqualification was required only after "application by either party. . . ." Act of Mar. 3, 1911, ch. 231, § 20, 36 Stat. 1090. *See, e. g., In re Fox West Coast Theatres*, 25 F.Supp. 250, 259 (S.D.Cal. 1936), *aff'd*, 88 F.2d 212 (9th Cir.), *cert. denied sub nom. Talley v. Fox Film Corp.*, 301 U.S. 710, 57 S.Ct. 944, 81 L.Ed. 1363 (1937); *Borough of Hasbrouck Heights v. Agrios*, 10 F.Supp. 371, 374 (D.N.J.1935).

Although the statute is now written in mandatory terms, without the need for a motion by the parties, some courts nonetheless have allowed the statute's requirements to be waived by express consent of the parties. *Thomas v. United States*, 363 F.2d 849, 851 (9th Cir. 1966); *Harris v. United States*, 338 F.2d 75, 79 (9th Cir. 1964); *Neil v. United States*, 205 F.2d 121, 125 (9th Cir. 1953); *Neiman-Marcus Co. v. Lait*, 107 F.Supp. 96, 102 (S.D.N.Y.1952); *cf.* Comment, Disqualification for Interest of Lower Federal Court Judges, 71 Mich.L.Rev. 538, 543 (1973).

Only one court has held that the 1948 amendment precludes a waiver of the § 455

objection. *United States v. Amerine*, 411 F.2d 1130, 1134 (6th Cir. 1969). *See* Note, Disqualification of Judges and Justices in the Federal Courts, 86 Harv.L.Rev. 736, 738 n. 14 (1973). We believe that this is the more informed view, and thus reach the merits of the petitioners' § 455 claim.

8. When the statute was amended once again in 1974, the "case" requirement was eliminated and the standards for disqualification were modified. Act of Dec. 5, 1974, Pub.L. No. 93–512, § 1, 88 Stat. 1609. The 1974 amendment does not affect the trial of the petitioners, however, because the trial occurred prior to the effective date of the new statute. *Id.* § 3; *Duplan Corp. v. Deering Milliken, Inc.*, 400 F.Supp. 497, 505 (D.S.C.1975); *United States v. Clark*, 398 F.Supp. 341, 362 n. 13 (E.D.Pa. 1975).

9. *Cf. Gravenmier v. United States*, 469 F.2d 66, 67 (9th Cir. 1972). Congressman Kastenmeier, the sponsor of the 1974 amendment to § 455, views the "case" requirement of the pre-1974 version of the statute in the same way as do the Third and Sixth Circuits. 120 Cong.Rec. H 10731 (daily ed. Nov. 18, 1974).

10. 426 F.2d at 269 (emphasis added).

11. *Id.*

12. 486 F.2d at 1015.

was presented to the district court that even tended to show that the prosecution either began or continued during the tenure of U.S. Attorney Bauer.[13]

Thus, Judge Bauer did not sit in a "case" in which he had been "of counsel"[14] or in which he had a "substantial interest,"[15] the congressional standards for mandatory disqualification. There was therefore no violation of the statute.[16]

■ Nor did Judge Bauer's decision to preside at the trial lead to a constitutional violation. The Supreme Court has held that the due process clause prohibits a criminal trial in which the judge "has a direct, personal, substantial, pecuniary interest in reaching a conclusion against [the defendant] in his case."[17] But it is not alleged that Judge Bauer had any financial stake in the outcome of the prosecutions here. More broadly, the Supreme Court has ruled that "[e]very procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused, denies the latter due process of law."[18] The conflicts of interest present in the cases in which this standard was enunciated were, however,

**13.** Petitioners note that Thomas Foran, the previous U.S. Attorney, refused to represent some of them in their defense to this prosecution, on the basis that when he was the U.S. Attorney he had seen a document regarding payoffs to one of the petitioners. They contend that this shows that the investigation began during the Foran term in office and continued while Mr. Bauer occupied the office. However, Mr. Foran had seen the document in connection with a totally unrelated concern, and no office file relating to the payoff scheme was opened when he was U.S. Attorney. We thus cannot accept the argument that the "case" began before, and continued during, U.S. Attorney Bauer's term.

This interpretation of the documents presented to the district court also resolves the petitioners' claim that it was improper for the district court to grant summary judgment. In our view of the case, there was no dispute over any *material* factual issue, the standard established in Rule 56(c) of the Federal Rules of Civil Procedure. *Kiess v. Eason*, 442 F.2d 712, 713 (7th Cir. 1971).

**14.** There is no doubt that the U.S. Attorney is "of counsel" to the United States in all criminal prosecutions brought within his district. This has been the rule for almost 30 years, since the decisions in *United States v. Vasilick*, 160 F.2d 631, 632 (3d Cir. 1947), and *United States v. Maher*, 88 F.Supp. 1007, 1008 (D.Me. 1950). Courts uniformly follow that rule today. *See, e. g., In re Grand Jury Investigation*, 486 F.2d 1013, 1015 (3d Cir. 1973), *cert. denied sub nom. Testa v. United States*, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974); *United States v. Amerine*, 411 F.2d 1130, 1133 (6th Cir. 1969); *Adams v. United States*, 302 F.2d 307, 310 (5th Cir. 1962).

**15.** The "substantial interest" contemplated by § 455 is usually construed as a financial interest. *See, e. g., In re Grand Jury Investigation*, 486 F.2d 1013, 1016 (3d Cir. 1973), *cert. denied sub nom. Testa v. United States*, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974); *United States v. Bell*, 351 F.2d 868, 878 (6th Cir. 1965), *cert. denied*, 383 U.S. 947, 86 S.Ct. 1200, 16 L.Ed.2d 210 (1966); *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 324 F.Supp. 1371, 1385 (S.D.Tex.1969), *aff'd*, 441 F.2d 631 (5th Cir.), *cert. denied*, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971); Note, *supra* note 7, at 740; Comment, *supra* note 7, at 553.

The Fifth Circuit has taken the broader view that a "substantial interest" is not only financial, but encompasses "the interest that any lawyer has in pushing his case to a successful conclusion." *Adams v. United States*, 302 F.2d 307, 310 (5th Cir. 1962); *accord, Roberson v. United States*, 249 F.2d 737, 741 (5th Cir. 1957), *cert. denied*, 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958). Because we conclude that there was no relationship to a § 455 "case," we need not address this conflict.

**16.** Cf. *United States v. Ming*, 466 F.2d 1000, 1004 (7th Cir.), *cert. denied*, 409 U.S. 915, 93 S.Ct. 235, 34 L.Ed.2d 176 (1972) (duty to sit). No evidence whatever was proffered in support of the allegation that U.S. Attorney Bauer appeared before the grand jury that investigated the extortion ring and indicted the petitioners.

**17.** *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927). *Accord, Ward v. Village of Monroeville*, 409 U.S. 57, 60, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972).

**18.** *Ward v. Village of Monroeville*, 409 U.S. 57, 60, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

much more extreme than the lack of impartiality suggested here.[19]

■ Furthermore, any error was harmless.[20] At the end of the trial, the defendants stated to Judge Bauer that he had been impeccably fair and just in presiding over the proceedings. The Judge's ruling of law that the Hobbs Act applied to the activities of the police in this case cannot even be considered error, since the same conclusion was reached independently by this Court on appeal.[21]

Finally, several Supreme Court Justices have sat in cases in which their relationship to the issues involved was at least as close as was Judge Bauer's in this case. The most recent example is Justice Rehnquist, who declined to disqualify himself from sitting in *Laird v. Tatum*[22] although he had appeared as the Justice Department's expert witness before a Congressional subcommittee to give testimony about some of the issues raised in *Laird*.[23] In his memorandum opinion on the disqualification issue, Justice Rehnquist mentioned other examples of Justices who had sat in cases despite an apparent conflict greater than Judge Bauer's was here:[24] As a Senator, Hugo Black was a primary author of the Fair Labor Standards Act; yet as a Justice he sat in the case upholding its constitutionality and in later cases constru-

ing it. As a law professor, Felix Frankfurter was a co-author of *The Labor Injunction* and a principal drafter of the Norris-LaGuardia Act; yet as a Justice he delivered the opinion of the Court in the *Hutcheson* case, which determined the scope of that statute. There are other examples as well.[25]

Accordingly, we hold that Judge Bauer violated neither section 455 nor contemporary constitutional standards by presiding at the trial in this case.[26]

## IV.

It is alleged that when Judge Bauer asked the U.S. Attorney's office when the investigation of the petitioners had begun, he was intentionally misled into believing that it had commenced after his departure from that office. In fact, petitioners state, it began before U.S. Attorney Bauer took the bench. They proceed to argue that the intentional misrepresentation was a prosecutorial impropriety that requires reversal. We reject that argument.

■ First, this claim was neither set forth in the section 455 petition nor discussed in the two memorandum opinions by the district court. Such an issue may not be raised for the first time in this Court.[27]

---

**19.** *Ward* involved a trial for traffic offenses held before a village mayor who had responsibilities for revenue production and law enforcement. The judge in *Murchison* had served as a "one-man grand jury" that indicted the defendant. And the judge in *Tumey* was a village mayor who could raise money for the village's treasury and recover his own costs only when he found defendants guilty.

**20.** *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**21.** *See United States v. Braasch*, 505 F.2d 139, 147 (7th Cir. 1974), *cert. denied sub nom. Barry v. United States*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975). We also observe that the considerations present in a collateral attack on a conviction, such as that here, may differ from those in a direct appeal. *Cf. Schneckloth v. Bustamonte*, 412 U.S. 218, 250–75, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (Powell, J., concurring).

**22.** 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

**23.** 409 U.S. 824, 824–28, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (memorandum of Rehnquist, J.).

**24.** *Id.* at 831–32, 93 S.Ct. 7.

**25.** *See id.* at 832–33, 93 S.Ct. 7. For another variant of the problem, see *Pennsylvania v. Operating Eng'rs Local 542*, 388 F.Supp. 155 (E.D.Pa.1974) (Higginbotham, J.).

**26.** For a discussion of the delicate question whether a judge should sit or disqualify himself, *see* Note, Disqualification of Judges and Justices in the Federal Courts, 86 Harv.L.Rev. 736, 746–47 (1973).

**27.** *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.*, 508 F.2d 417, 420 (7th Cir. 1975). In *Ohio Casualty Ins. Co. v. Rynearson*, 507 F.2d 573, 582 (7th Cir. 1974), this Court stated that "[t]he principle that new issues . . . may not be raised for the first

Second, we have already determined that it was not constitutional error for Judge Bauer to preside at the trial of this case. Thus, assuming *arguendo* that the communication was erroneous, it would not be unconstitutional under the facts in this case for him to have relied upon it in deciding whether to sit.

### V.

Petitioners' final argument in this appeal is that the procedures used by the district court in determining the section 2255 motion were deficient in two respects: the scope of discovery allowed by the court was impermissibly narrow, and the denial of an evidentiary hearing violated the precepts of section 2255. We believe this contention is without merit.

The Supreme Court's decision in *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), makes clear that the scope of discovery to be allowed in a collateral attack upon a conviction lies in the discretion of the district court. Rejecting the contention that the Federal Rules of Civil Procedure should apply directly to habeas corpus proceedings, the Supreme Court held that certain federal procedural rules could be applied "by analogy or otherwise, where appropriate." [28] Through the power granted by the All Writs Act, district courts may order such discovery, in this fashion, as they deem necessary to determine the facts adequately.[29]

In the proceedings held in the district court, depositions and affidavits were considered. Although it is understandable that petitioners may have desired a chance for greater discovery than that, we certainly cannot say that the scope of discovery allowed by the district court constituted an abuse of its discretion.

The assertion that the district court should have held a hearing is based upon the language of section 2255 [30] and the construction given it in *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). However, it is the rule of this Court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit [31] which shows that the petitioner has actual proof of the allegations going beyond mere unsupported assertions.[32] The petitioners failed to meet this burden. Thomas Foran's affidavit, the only one filed with the petition, was not specifically detailed, nor did it demonstrate that petitioners had actual proof of the allegations they had made. The affidavit stated only that Mr. Foran had refused to represent several of the petitioners in their criminal defense at the original trial because he "recalled that facts relevant to [the case] had been called to [his] attention while [he] was United States

---

time on appeal is too well known to require citation."

**28.** 394 U.S. at 294, 89 S.Ct. at 1088 (footnote omitted).

**29.** *Id.* at 300, 89 S.Ct. 1082. *Harris* arose in the context of a state habeas corpus petition, but its principles have been applied directly to federal proceedings governed by § 2255, as well. *Argo v. United States*, 473 F.2d 1315, 1317 (9th Cir.), *cert. denied*, 412 U.S. 906, 93 S.Ct. 2298, 36 L.Ed.2d 972 (1973).

**30.** The statute provides in part that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon . . . ."

**31.** *Moody v. United States*, 497 F.2d 359, 362 (7th Cir. 1974); *Burris v. United States*, 430 F.2d 399, 401 (7th Cir. 1970), *cert. denied*, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971); *Stetson v. United States*, 417 F.2d 1250, 1252–53 (7th Cir. 1969); *United States v. Martinez*, 413 F.2d 61, 64 (7th Cir. 1969).

**32.** *United States v. Lowe*, 367 F.2d 44, 45–46 (7th Cir. 1966); *Mitchell v. United States*, 359 F.2d 833, 837 (7th Cir. 1966); *Davis v. United States*, 311 F.2d 495, 496 (7th Cir.), *cert. denied*, 374 U.S. 846, 83 S.Ct. 1906, 10 L.Ed.2d 1067 (1963); *United States v. Mathison*, 256 F.2d 803, 805 (7th Cir.), *cert. denied*, 358 U.S. 857, 79 S.Ct. 77, 3 L.Ed.2d 91 (1958); *United States v. Trumblay*, 256 F.2d 615, 617 (7th Cir. 1958), *cert. denied*, 358 U.S. 947, 79 S.Ct. 355, 3 L.Ed.2d 353 (1959).

Attorney . . .." This by itself was not sufficient to require a hearing, and its alleged relevance to the case was weakened by Mr. Foran's deposition, when he stated that the "facts" he had learned had been brought to his attention in a totally unrelated context. Thus, the petition that was employed to support the claim that petitioners were entitled to a hearing was essentially predicated on conjecture and speculation.[33] This is patently insufficient.

### VI.

Accordingly, the judgment of the district court is

Affirmed.

---

33. For an example of factual support of a petition clearly calling for a hearing, see *Teague v. United States*, 499 F.2d 1381 (7th Cir. 1974).

A hearing was ordered in *Sanders v. United States*, 373 U.S. 1, 19–20 (1963), on the basis of allegations alone. However, the hearing there required testimony only from the petitioner himself. Where a high governmental official would have to be extensively interrogated, different considerations are appropriate, and the requirement of factual support for the allegations, established in this Court's prior decisions, will be read strictly.