**UNITED STATES of America, Appellee,**

v.

**James E. LITTLE, Appellant.**

**No. 78–1862.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1979.

Decided Oct. 22, 1979.

Rehearing and Rehearing En Banc
Denied Nov. 26, 1979.

---

Samuel Raban, St. Louis, Mo., for appellant.

Michael W. Reap, Asst. U. S. Atty., St. Louis, Mo., for appellee; Robert D. Kingsland, U. S. Atty., and Mitchell F. Stevens, Asst. U. S. Atty., St. Louis, Mo., on brief.

Before HEANEY and STEPHENSON, Circuit Judges, and MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

* HOWARD T. MARKEY, Chief Judge, United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

HEANEY, Circuit Judge.

James E. Little appeals from the District Court's [1] denial of his motion and amended motion for a writ of error coram nobis and his application for a hearing on those motions. He contends that the District Court erred in refusing to order a hearing on the issue of whether his 1963 convictions for securities violations were obtained in violation of his right to a fair trial. We affirm the District Court's order.

Little was convicted by a jury on April 19, 1963, of eight counts of violating § 17 of the Securities Act of 1933, 15 U.S.C. § 77q(a). The government charged that Little made fraudulent misrepresentations in connection with the sale of fractional undivided interests in oil and gas leases in a tract of land known as the Blackburn lease. The indictment alleged that Little acquired a 25-acre portion of an oil and gas lease from Associated Drilling Corporation, divided it into two leases known as Blackburn A and Blackburn B, and sold interests therein. Little deposited the proceeds of these sales into the checking account of Star Oil Corporation, a corporation which he controlled. The fraudulent misrepresentations alleged in the sale of these securities included statements that Little acted for Associated in soliciting the sales, that Star Oil and Associated were affiliated, and that Blackburn A had produced and Blackburn B would produce certain amounts of oil. An important issue became whether Little was, as he stated, a vice-president of Associated.

Little brought a motion for a new trial on May 24, 1963, alleging two instances of juror improprieties: first, that a juror had conversed with a crucial witness during the trial; and, second, that another juror concealed on voir dire his involvement in a lawsuit in which an adverse party had been represented by a member of the law firm which defended Little. The court held a hearing on that motion on June 7, 1963, and

1. Honorable H. Kenneth Wangelin, Judge for the Eastern District of Missouri, Eastern Division.

examined the jurors and others. On June 17, 1963, the court denied the motion for a new trial and sentenced Little to four years imprisonment. Little appealed the conviction and the denial of his motion for a new trial, and we affirmed both on May 6, 1964.[2]

On November 5, 1964, Little filed a second motion for a new trial, alleging that he had newly discovered evidence regarding government suppression of evidence in his case. He stated that George Sakellaris, for whom a defense subpoena had been issued and returned without service, was contacted by the government, brought to the Federal Courthouse in St. Louis during Little's trial, and interviewed by government attorneys. Little alleged that the government attorneys secluded Sakellaris and did not allow him to have lunch in a public restaurant, to circulate in the lobby or halls of the Courthouse, or to be near the courtroom in which Little's trial was being held. He alleged that Sakellaris was escorted out of the building through back exits to a Post Office loading dock.

Little stated that Sakellaris and two other potential witnesses were secluded because they had given the government attorneys exculpatory information about Little. Little alleged that those three witnesses and Harold Adams, who testified for the government, were "intimidated from communicating with the defendant or any of his counsel and were in fear of reprisal from the powerful Federal Authorities and lawyers who had ordered them into the courthouse in the first place." Little specifically alleged that the government intimidated Harold Adams into not testifying that he considered Little to be a vice-president of Associated. Little presented affidavits from Harold Adams stating this to be true. He did not submit an affidavit from Sakellaris at that time or with his present motion. He did, however, present affidavits from the other two witnesses who were allegedly secluded, but these affidavits did not set out the content of any statements made by these witnesses to the government attorneys.

Little alleged that Sakellaris gave the government exculpatory information on two important issues in the case: that persons other than Little were responsible for a certain letter sent to investors, and that Associated had, on certain occasions, listed Little as a vice-president of that company. Little also called the court's attention to the prosecutor's closing argument, which suggested that if Little were trying to show that Sakellaris was responsible for the letter, he should have called Sakellaris as a witness. The prosecutor told the jury that he "would like to know where George Sakellaris was," although the prosecutor himself had obtained Sakellaris' presence in St. Louis during the trial.

Judge Harper, who presided at Little's trial, held a hearing on Little's second motion for a new trial on January 8, 1965. Little's attorney called as witnesses two government attorneys who investigated and tried the case against Little. He attempted to determine from them whether Sakellaris, or other witnesses, had been purposefully secluded and whether exculpatory information had been suppressed. They testified that the witnesses were not secluded or prevented from circulating in the building, and denied that the witnesses were told not to speak to Little or his counsel. The government attorneys stated that Sakellaris said he did not know who wrote the letter in question and they denied any conversation with Sakellaris on Little's status as a vice-president.

Little's attorney did not present any other witnesses. He had subpoenaed Sakellaris, but the subpoena was to secure his appearance on the original hearing date, December 4, 1964. On request of Little's attorney, the hearing had been continued to January 8, 1965. The attorney stated that Sakellaris had been notified by letter of the change of date, but Sakellaris did not appear at the hearing. Although Little's at-

2. *Little v. United States*, 331 F.2d 287 (8th Cir.), *cert. denied*, 379 U.S. 834, 85 S.Ct. 68, 13 L.Ed.2d 834 (1964).

torney did not move for a continuance, the court gratuitously stated its unwillingness to delay the hearing and indicated it would probably not believe Sakellaris in any event. At several points in the hearing, Judge Harper also stressed that he would not grant Little's motion unless Little presented live witnesses in that these witnesses needed to know the penalties for perjury before they testified to prior false statements.

At the close of the hearing, Judge Harper denied Little's motion for a new trial. Little did not appeal this denial and fully served his sentence for the conviction.

In January, 1977, Little was again convicted in federal court, this time for mail fraud. He alleges that his previous conviction burdened him at the second trial, enhanced his sentence and now reduces his chances of parole.

Little filed his instant coram nobis petition on April 11, 1978, stating grounds virtually identical to those raised in his second motion for a new trial back in 1964. He also raised the issue of the fairness of the hearing on his second motion for a new trial, alleging bias of the trial court. He objected to the court's sealing of notes from which the government attorney testified at the hearing. Little later filed a supplemental motion for a writ of error coram nobis, adding the allegation that Max Mock, a director of Associated, was coerced by his banker, whom a government attorney had allegedly contacted, into not testifying at Little's trial. Little also raised again the issue of juror improprieties which this Court adversely decided in Little's appeal from his conviction. Little contends on appeal that the District Court's[3] failure to order an evidentiary hearing on these claims was in error.[4]

■ Because Little has fully served his 1963 sentence, he seeks coram nobis relief under the All Writs Section of the Judicial Code, 28 U.S.C. § 1651. *See United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Since, however, Little is again in federal custody on a subsequent conviction and alleges that the latter sentence was enhanced by his previous conviction, it appears that Little's remedy does not lie in coram nobis but in a petition for post-conviction relief under 28 U.S.C. § 2255.[5] *Correa-Negron v. United States,* 473 F.2d 684 (5th Cir.), *cert. denied,* 414 U.S. 870, 94 S.Ct. 89, 38 L.Ed.2d 88 (1973). *See United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). The two remedies are, however, substantially equivalent, *Clark v. United States,* 370 F.Supp. 92 (W.D.Pa.1974), and we treat Little's petition as one for post-conviction relief under 28 U.S.C. § 2255.

■ Little contends on appeal that he is entitled to a hearing to show prosecutorial misconduct which resulted in the suppression of evidence in his trial. Little, however, has not shown that he was unaware of this suppression in January, 1965; in fact, Little made the same allegations regarding the suppression of George Sakellaris in 1965 that he makes today. Little's attorney stated at the 1965 hearing that Sakellaris had been subpoenaed to appear December 4, 1964, the original hearing date, and that he had been notified by letter of the hearing's continuance. Little did not formally·request a continuance to secure Sakellaris' attendance, nor did he submit an affidavit from Sakellaris. The failure to grant a

---

**3.** Judge Harper, who was originally assigned to hear the motion, recused himself on Little's motion and the case was transferred to Judge Wangelin.

**4.** The District Court referred the matter to a magistrate and accepted his report and recommendation on Little's claim.

**5.** Coram nobis lies only where the petitioner has completed his sentence and is no longer in federal custody, *Gajewski v. United States,* 368 F.2d 533 (8th Cir. 1966), *cert. denied,* 386 U.S. 913, 87 S.Ct. 865, 17 L.Ed.2d 786 (1967), is serving a sentence for a subsequent state conviction, *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); *Azzone v. United States,* 341 F.2d 417 (8th Cir.), *cert. denied,* 381 U.S. 943, 85 S.Ct. 1782, 14 L.Ed.2d 706 (1965), or has not begun serving the federal sentence under attack, *Thomas v. United States,* 106 U.S.App.D.C. 234, 271 F.2d 500 (D.C.Cir. 1959).

continuance is not a ground for attack of a conviction under § 2255. *Houser v. United States,* 508 F.2d 509 (8th Cir. 1974).

Little offered the same affidavits by Harold Adams in 1965 that he offers in support of his present motion. In the motion for a new trial, Little specifically referred to the government's "brainwashing" of Adams to produce favorable testimony. Little, however, did not appeal the denial of his motion for a new trial. He has not attacked his conviction between 1965 and the filing of his motion for a writ of error in 1978 and does not point out any substantial reason for failing to do so. He does not now offer witnesses of whom he was unaware in 1965 nor does he allege that he was unaware of his right to appeal in 1965. Rather, his attorney stated at our oral argument that, in 1965, Little had intended to attack his conviction some other way. Little, who holds a law degree, cannot be said to have been ignorant of his right to appeal in 1965.

■ Although a failure to appeal does not unconditionally waive the right to later raise a constitutional defect in a conviction, *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969),

> [w]here a trial or appellate court has determined the federal prisoner's claim, discretion may in a proper case be exercised against the grant of a § 2255 hearing. * * *
>
> Furthermore, the § 2255 court may in a proper case deny relief to a federal prisoner who has deliberately bypassed the orderly federal procedures provided at or before trial and by way of appeal[.]

*Id.* at 227 n. 8, 89 S.Ct. at 1075–76 n. 8. In *Whitney v. United States,* 513 F.2d 326, 328–329 (8th Cir. 1974), we noted that a deliberate decision not to contest a trial court's ruling can operate as a waiver of the right to challenge it in a § 2255 proceeding. In *Jones v. United States,* 580 F.2d 349 (8th Cir.), *cert. denied,* 439 U.S. 985, 99 S.Ct. 578, 58 L.Ed.2d 657 (1978), we held that a pris-

oner, who was also an attorney, was not entitled to a hearing on his § 2255 motion where, although he raised his double jeopardy claim at trial, he chose not to appeal the trial court's adverse ruling on that claim. We are not unmindful of the fact that Little makes serious allegations of prosecutorial misconduct and that some of the allegations may have merit. This does not, however, overcome his failure to appeal from an adverse decision in 1965 and his failure to raise these allegations during the thirteen years since his second motion for a new trial. We do not imply that newly discovered evidence of misconduct would not state a claim under § 2255. However, Little's claim, with one exception, is grounded on the same facts and theory now that it was on the earlier date.

■ The one exception is the claim that the government suppressed the testimony of Max Mock, a director of Associated, by indirect pressure on Mock through his banker, a Blackburn investor. Little does not claim he learned of this suppression subsequent to the hearing on his prior motions for a new trial.[6] Little alleges that Mock will testify to the truth of Little's representations to the investors. Little has not, however, submitted an affidavit from Mock, Mock's banker, or any other person with direct knowledge of the alleged coercion. Little's claim, unsupported by affidavits or other corroboration, is too conclusory to afford a ground for attacking his sixteen-year-old conviction. The District Court did not err in denying Little's petition without a hearing. *Cf. Barry v. United States,* 528 F.2d 1094, 1101 (7th Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); *Olive v. United States,* 327 F.2d 646, 649 (6th Cir.), *cert. denied,* 377 U.S. 971, 84 S.Ct. 1653, 12 L.Ed.2d 740 (1964).

■ Little also contends that he is entitled to relief because Judge Harper, at the hearing on Little's second motion for a new trial in 1965, ordered the sealing of certain notes from which the government attorney testified. These notes were those of the

---

**6.** Indeed, the District Court docket sheet shows that a subpoena was executed on Max Mock on December 23, 1964, although Little's attorney did not call Mock as a witness at the hearing.

attorney's interview of Sakellaris in 1962, approximately a year before the trial, and Little claims they were producible as Jencks Act materials. Ordinarily, the failure to produce such materials is not a ground for post-conviction relief which is cognizable under § 2255. *Wilson v. United States,* 554 F.2d 893 (8th Cir.), *cert. denied,* 434 U.S. 849, 98 S.Ct. 158, 54 L.Ed.2d 117 (1977). Moreover, we have examined these notes and find that they do not support any of Little's claims.

 The claims of juror improprieties were determined by this Court in Little's appeal from the denial of his first motion for a new trial. He has not alleged the discovery of any additional evidence or any change in the law since that denial, and we decline reconsideration of the issue at this time.

For the foregoing reasons, the judgment of the District Court is affirmed.