Steven King **AINSWORTH**, Petitioner,

v.

Daniel **VASQUEZ**, Warden of the State Prison at San Quentin, and James Rowland, Director of the California Department of Corrections, Respondents.

Darrell Keith **RICH**, Petitioner,

v.

Daniel **VASQUEZ**, Warden of the State Prison at San Quentin, and James Rowland, Director of the California Department of Corrections, Respondents.

Nos. CIV–S–90–329–LKK–JFM, CIV–S–89–823–EJG–GGH.

United States District Court, E.D. California.

March 15, 1991.

---

**1468**

James S. Thomson, Sacramento, Cal., for Darrell Keith Rich.

Quin Denvir, Sacramento, Cal., for Steven King Ainsworth.

Robert Jibson, Deputy Atty. Gen., Sacramento, Cal., for respondents.

Before KARLTON, Chief Judge Emeritus, and GARCIA, SHUBB and LEVI, District Judges.

## OPINION

LEVI, District Judge:

In these two death penalty habeas corpus cases, petitioners seek reconsideration of orders by the magistrate judges setting hearings that have come to be known as "*Neuschafer* hearings".[1] At such a hearing the magistrate judge proposes to question the petitioner concerning the existence of any unexhausted habeas corpus claims. The stated primary purpose of the hearing is to attempt to consolidate all claims in one proceeding and to avoid the piecemeal treatment of claims in multiple petitions.

---

**1.** See *Neuschafer v. Whitley,* 860 F.2d 1470 (9th Cir.1988). The procedure followed by the magistrate judges in these two cases is similar to that recommended in the concurring opinion of Judge Alarcon.

Because this procedure will be at issue in many death penalty habeas corpus petitions pending in this court, the court has elected to determine the matter en banc.[2] For the reasons discussed below, the orders of the magistrate judges setting such hearings are affirmed.

## I. STANDARD OF REVIEW

The district court reviews orders by a magistrate judge regarding non-dispositive matters under the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C. 636(b)(1)(A). *See United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 2411, 65 L.Ed.2d 424 (1980); *United States v. Peacock*, 761 F.2d 1313 (9th Cir.1985). Local Rule 304(f) provides that motions to the district court seeking reconsideration of a magistrate judge's order are also reviewed on the "clearly erroneous or contrary to law" standard. Thus the question before the court is not whether the proposed hearing is necessary or even, in our judgment, beneficial to the management of these cases, but rather whether the holding of such a hearing is clearly erroneous or contrary to law.

## II. THE MAGISTRATE JUDGES' ORDERS

### A. Procedural Background

On March 16, 1990, petitioner Steven King Ainsworth filed a petition for writ of habeas corpus in this court, together with an emergency application for a stay of his execution, then scheduled for April 6, 1990. The petition is Ainsworth's first in federal court, and he asserts that he has exhausted state remedies as to all claims presented therein. Petition for Writ of Habeas Corpus, at 4–5. On March 22, 1990, the court granted Ainsworth's application for a stay of execution, pursuant to Local Rule 191(h)(1).[3] On July 27, 1990, the magistrate judge issued an order setting a *Neuschafer* hearing. On September 6, 1990, petitioner Ainsworth filed an objection to the proposed hearing. On September 27, 1990, the magistrate judge overruled petitioner's objection. On October 2, 1990, petitioner filed the instant request for reconsideration by the District Court of the magistrate judge's ruling.

On June 8, 1989, petitioner Darrell Keith Rich filed a request for appointment of counsel and for a stay of his execution in the United States District Court for the Northern District of California. On June 8, 1989, that court stayed petitioner Rich's execution then scheduled for June 16, 1989, and transferred the action to this court. On August 25, 1989, the magistrate judge granted petitioner's request for appointment of counsel. On August 7, 1990, the magistrate judge set a *Neuschafer* hearing. On August 15, 1990, petitioner Rich filed an objection to the proposed hearing. On August 17, 1990, the magistrate judge overruled petitioner's objections. On September 17, 1990, petitioner Rich filed the instant request for reconsideration by the District Court of the magistrate judge's order setting the *Neuschafer* hearing. On September 28, 1990, petitioner Rich filed a petition for writ of habeas corpus and for a stay of execution, then scheduled for October 12, 1990.

On November 19, 1990, this court entered an order finding that a uniform response to the issues tendered by the magistrate judges' orders would best serve the litigants' and the district's interests. The order transferred both *Ainsworth*, and *Rich*, to the active judges of the Sacramen-

---

**2.** The district courts' authority to sit en banc was discussed in *United States v. Anaya*, 509 F.Supp. 289, 293–94 (S.D.Fla.1980). The *Anaya* court concluded that "Congress, in enacting 28 U.S.C. § 132(c) ... contemplated that a District Court might, pursuant to 'rule or order of Court,' conduct an *en banc* session." *Id.* at 293–94, citing 7B *Moore's Federal Practice* 154–154.1 (1979); C. Wright, A. Miller & E. Cooper, 13 *Federal Practice and Procedure:* Jurisdiction § 3505, at 14; *White v. Swenson*, 261 F.Supp. 42 (D.Mo.1966). The *Anaya* court found that "[t]he legislative history to 28 U.S.C. Section 132(c) makes clear that the statute 'merely recognize[d] [this] established practice.' House Comm. on Judiciary, Revision of Title 28, United States Code, H.R.Rep. No 308, 80th Cong., 1st Sess. A28 (1947)." 509 F.Supp. at 294.

**3.** Local Rule 191(h)(1) provides that "[u]pon the filing of a habeas corpus petition, unless the petition is patently frivolous, the district court shall issue a stay of execution pending a final disposition of the matter."

to Division of this court, sitting en banc, solely to hear and dispose of the motions seeking reconsideration of the magistrate judges' orders setting *Neuschafer* hearings. On December 4, 1990, the court remanded both cases to allow the magistrate judges an opportunity to state their reasons for ordering the proposed hearings. These memoranda were filed on December 7, 1990.

## B. *Neuschafer* and the Proposed Hearings

The orders we are asked to reconsider set hearings "to inquire into the existence of all exhausted and unexhausted claims as suggested in Judge Alarcon's concurrence in *Neuschafer v. Whitley,* 860 F.2d 1470, 1482 (9th Cir.1988)." *Ainsworth,* No. CIV. S-90-329, at 2 (E.D.Cal. July 29, 1990) (order setting hearing).

In *Neuschafer,* having attempted unsuccessfully to obtain a stay in state court, the petitioner filed an initial federal habeas petition just days before his scheduled execution date. In granting a stay of execution, the district court instructed the petitioner to raise *all* known claims and permitted him to file a supplemental petition. The supplemental petition included only claims that had been exhausted in state proceedings. This petition eventually was denied. A second execution date then was set, and the evening before his execution, Neuschafer filed a second federal habeas petition raising several new grounds. The district court granted a stay of execution, and held a hearing to determine whether Neuschafer's second petition constituted an abuse of the writ. The district court determined that Neuschafer had earlier made a conscious decision to deliberately withhold known unexhausted grounds from his first federal habeas petition because he feared that it would have been dismissed for failure to exhaust state remedies. The district court concluded that as a matter of law, "the fact that the present claims were unexhausted at the time of the first federal habeas petition does not constitute a defense against abuse of the writ charges," and dismissed the petition. *Neuschafer v.* *Whitley,* 674 F.Supp. 1418, 1425 (D.Nev. 1987). Neuschafer appealed.

The Ninth Circuit reversed, holding that: Neuschafer's claim that he did not bring the claims in his first federal petition because they were unexhausted and barred by *Rose* [*v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)] precludes a finding that he *deliberately* withheld those claims from his first federal petition and thereby abused the writ when he brought them in a second federal petition.

*Neuschafer,* 860 F.2d at 1476 (emphasis in original).

In a concurring opinion, Judge Alarcon sought to dispel the fear that the court's ruling necessarily would permit petitioners to exhaust their claims one by one in state court and then bring successive habeas petitions in federal court. An abuse of the writ might still be found "if the record shows that the petitioner was not acting in good faith or was deliberately seeking to present his claims in a piecemeal fashion." 860 F.2d at 1480. Judge Alarcon further suggested a specific procedure by which district courts should "flush[ ] out" unexhausted claims by (1) directing petitioner's counsel to review the record and to inform the court whether any claims remained unexhausted, and (2) giving petitioner a choice of either abandoning unexhausted claims or holding the federal proceedings in abeyance until state remedies were exhausted. *Id.* at 1482. Judge Alarcon suggested that this procedure should be followed in cases "where a petitioner is compelled to file a habeas petition alleging exhausted claims at the eleventh hour, because the state court has refused to grant counsel sufficient time to exhaust all claims in state court." *Id.*

In the cases now before the court the magistrate judges have adopted, with modification, the approach suggested by Judge Alarcon's concurring opinion. The orders at issue here direct that the petitioner and counsel for both parties attend a hearing at which the magistrate judge will question the petitioner concerning his petition. The orders provide that portions of the hear-

ings may be held ex parte if necessary to protect privileged communications or privileged attorney work product. The orders instruct petitioners' counsel to meet with their clients prior to the hearing, and to ensure that their clients are aware of the petition's contents. The orders set forth the general types of questions the court will ask of the petitioners.[4] Finally, the orders invite the parties to suggest modifications to the procedure set forth therein.

The proposed hearings are intended to serve two primary goals of this court in managing capital habeas corpus cases: "to ensure that petitioner is well represented in a full and fair hearing of all his federally cognizable claims and, second, to see to it that all of petitioner's claims, except those which may be truly discovered late, are contained in the first petition for habeas corpus." *Ainsworth*, No. CIV.S–90–329, at 1–2 (December 7, 1990) (memorandum regarding reasons for setting hearing).

The magistrate judges set forth several additional reasons for the proposed hearing in memoranda explaining their intention in holding this type of hearing. First, the hearing would help illuminate latent problems concerning possible unexhausted claims at an early stage of the habeas corpus litigation. *Id.* at 3. Second, the hearing would provide a deadline by which petitioners are to set forth all claims, exhausted and unexhausted. *Id.* at 3–4. Third, the hearing would ensure that petitioners and counsel have met, conferred, and reviewed the petition. *Id.* at 4. Fourth, the hearing would give the court a factual context in which to evaluate subsequent allegations that a petitioner had been unable to present additional claims. *Id.* at 5. Such allegations would be made in the course of reviewing a later habeas corpus

petition—stating new grounds for relief—and a new motion to stay an execution date when time could be of the essence and petitioner might have new counsel. Finally, the hearing would help the court assure itself that the relationship between petitioner and appointed counsel was appropriate. *Id.*

## III. PETITIONERS' CONTENTIONS

Petitioners attack the proposed hearing on several grounds. Their principal contentions are two: first, they suggest that any procedure designed to consolidate claims deprives them of the legal right, established in *Neuschafer*, to bring their claims in piecemeal fashion; second, they argue that the procedure suggested by the magistrate judges will invade the attorney client privilege and relationship. In addition to these arguments, petitioners also suggest that the proposed hearing is unnecessary and unhelpful in light of the local rules of this court and other safeguards against piecemeal litigation of habeas corpus claims.

### A. Petitioners' Rights Under *Neuschafer*

At oral argument petitioners argued that the proposed hearings constitute an attempt to deprive them of an entitlement or right under *Neuschafer*. Petitioners contend that by attempting to illuminate all claims, both exhausted and unexhausted, the proposed hearings would impinge on their right, established in *Neuschafer*, to withhold known, unexhausted claims from their initial petition.

The court does not, however, understand *Neuschafer* as providing an unrestricted right to withhold known unexhausted

---

**4.** The questions include the following:

i. Have you had any alcohol, drugs or any type of medication in the last 24 hours? Are you suffering from any disabilities or illnesses that hinder your ability to understand these proceedings?

ii. Have you read the petition in preparation for this hearing?

iii. Have you had an opportunity to consult with counsel after reading the petition?

iv. Any claims under the federal constitution or laws which might be a basis for granting

relief from your conviction or sentence must be included in this petition. We are here to give you an opportunity to let me known if you have any claims which are not included in this petition. If you do not tell me now about additional claims you will probably not be allowed to raise these claims at a later date. In light of this, are you aware of any claims you have that are not already included in your petition?

*Ainsworth*, CIV. S–90–329, at 3–4 (July 27, 1990) (order setting hearing).

claims from an initial federal petition, and thereafter to bring successive petitions. In the particular circumstances presented in *Neuschafer* the Ninth Circuit held that the petitioner did not *"deliberately"* withhold his unexhausted claims from his first federal petition because, had he included those claims, his petition would have been dismissed under the rule in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379,[5] leading to his execution. *Neuschafer,* 860 F.2d at 1476 (emphasis in original).

Nothing in *Neuschafer* purported to change the traditional approach courts have taken to abuses of the writ.[6] The abuse of the writ doctrine is codified at 28 U.S.C. § 2244(b) and Rule 9 of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254. *See Richmond v. Ricketts,* 774 F.2d 957, 959 (9th Cir.1985). In *Sanders v. United States,* 373 U.S. 1, 18–19, 83 S.Ct. 1068, 1078–79, 10 L.Ed.2d 148 (1963), the Court set forth circumstances which constitute an abuse of the writ:

> A federal court need not consider habeas claims previously unlitigated in federal court if it determines that the petitioner (1) made a conscious decision deliberately to withhold them from a prior petition, (2) is pursuing needless piecemeal litigation, or (3) has raised the claim only to vex, harass, or delay.

And in *Rose,* a majority of the Court reaffirmed the *Sanders* standard and suggested that a petitioner who, for the purpose of delay, exhausted claims one by one in state court and then brought successive habeas petitions *might be found to have* abused the writ.[7]

In light of the abuse of the writ doctrine, the holding in *Neuschafer* must be read in its factual context. The District Court in which Neuschafer filed his initial petition did not have a local rule analogous to our Local Rule 191(h),[8] which provides for a nearly automatic stay of execution to allow petitioners to exhaust unexhausted claims. Had Neuschafer included unexhausted claims in his initial federal petition, he risked having the petition, and the stay of execution, dismissed as a "mixed" petition pursuant to *Rose.* As Judge Alarcon noted, "[s]urely [Neuschafer's] counsel cannot be faulted for pursuing the only course of action through which Neuschafer could hope to obtain a stay of execution and a hearing on his exhausted claims." *Neuschafer,* 860 F.2d at 1482 (Alarcon, J., concurring).

In short, the court does not understand *Neuschafer* to create a broad right to withhold known unexhausted claims or to bring successive petitions for the purpose of delay.

## B. Attorney–Client Privilege

Petitioners argue that the proposed hearing might force a petitioner to waive the attorney-client privilege and to disclose privileged attorney work product. They argue that in compelling petitioners to reveal unraised claims, the court may elicit privileged underlying communications and strategy. Petitioners further suggest that the proposed procedure weakens the adversarial process and jeopardizes a petitioner's right to a fair hearing by educating oppos-

---

**5.** In *Rose,* 455 U.S. 509, 102 S.Ct. 1198, the Supreme Court held that courts must dismiss federal habeas petitions that contain both exhausted and unexhausted claims.

**6.** At the conclusion of the majority opinion, the court expressed, in dicta, its appreciation for the potential problem of piecemeal litigation that may arise in habeas corpus litigation. 860 F.2d at 1477. We do not understand this portion of the opinion as compelling such piecemeal litigation or as depriving the district courts of their traditional authority to prevent abuses of the writ.

**7.** A plurality of the Court in *Rose* suggested that a petitioner who deliberately set aside unex-

hausted claims risked dismissal of subsequent federal petitions raising those issues under the abuse of the writ doctrine. 455 U.S. at 520–21, 102 S.Ct. at 1204–05. In a concurring opinion, Justice Blackmun suggested that under traditional standards a subsequent petition alleging new claims could be dismissed as an abuse of the writ when the petitioner deliberately withheld the claims from his first petition for the purpose of delay. *Rose,* 455 U.S. at 529, 102 S.Ct. at 1209 (Blackmun, J., concurring in the judgment).

**8.** *See* note 3, *supra.*

ing counsel and the court about the relative strengths and weaknesses of their case.

As noted above, the magistrate judges have provided that the hearing may be held ex parte for just these reasons. Review of allegedly privileged matters *in camera* does not terminate the attorney-client privilege and is an appropriate way in which to consider matters that may involve the privilege. *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 2629, 105 L.Ed.2d 469 (1989); *see also Kerr v. United States District Court*, 426 U.S. 394, 404–05, 96 S.Ct. 2119, 2124–25, 48 L.Ed.2d 725 (1976). Of course, the courts' right to inquire ex parte into allegedly privileged matters is not without bound. See *United States v. Zolin*, 491 U.S. at 570–71, 109 S.Ct. at 2630, quoting *United States v. Reynolds*, 345 U.S. 1, 8–10, 73 S.Ct. 528, 532–33, 97 L.Ed. 727 (1953). But the hearings and questioning proposed here is so limited in nature that the court finds no undue infringement on the attorney client privilege, if indeed there be any. Petitioners have not demonstrated that revealing known unexhausted claims to the court ex parte will in any way prejudice their case. The court therefore is not persuaded by petitioners' "generalized, unsupported assertion that disclosure of information associated with the statement of claims will somehow jeopardize the fairness of the process, or demonstrate a weakness in the case." *Rich*, No. CIV. S–89–823, at 6 (E.D. Cal. December 7, 1990).

Petitioners further suggest that relations between counsel and their death row clients are sensitive and difficult to maintain. The proposed procedure could strain this relationship, they argue, by making counsel reluctant to weed out meritless claims. Petitioners fear that the questioning necessary to acquire a valid waiver may undermine a petitioner's trust in counsel by revealing areas in which counsel and client disagree.

But as counsel for petitioners surely recognize, a dispute between petitioner and petitioner's counsel as to whether to raise a particular issue in a habeas petition must eventually be resolved whether doing so creates friction or not. It is far better that such matters be resolved early in the litiga-

tion rather than at a later time upon the filing of successive habeas corpus petitions.

Moreover, counsel in these capital habeas cases have been appointed by the court. The court, therefore, has a legitimate interest in assuring itself that counsel is performing adequately. As the magistrate judges recognize, petitioners' counsel in the two cases before the court are exemplary. *See Ainsworth*, No. CIV. S–90–329, at 5 (December 7, 1990). By adopting the proposed procedure, the magistrate judges intend to assure themselves that the same can be said in future cases.

Finally, the court notes that in other cases or in these cases on a different record at some later time, the court may be presented with circumstances in which the proposed hearing and inquiry would impinge impermissibly on the attorney client privilege or relationship. But the only basis we presently have for evaluating this claim is in light of the questions the magistrate judges propose asking, outlined above at note four. Given the magistrate judges' stated willingness to hold any necessary portion of the hearing ex parte, none of these questions appears improper, nor can the questions be said to require a disclosure of communications between attorney and client.

C. Petitioners Are Not in the *Neuschafer* Posture

Petitioners note that Judge Alarcon limited his suggested procedure to "future cases such as this—where a petitioner is compelled to file a habeas petition alleging exhausted claims at the eleventh hour, because the state court has refused to grant counsel sufficient time to exhaust claims in state court...." *Neuschafer*, 860 F.2d at 1482 (Alarcon, J., concurring). Petitioners argue that neither of the cases before the court involves eleventh hour petitions, or an inability to acquire a stay of execution. Petitioners argue that Local Rule 191(h), providing for a stay of execution, eliminates the incentive which Neuschafer had for intentionally withholding known unexhausted claims. Thus petitioners conclude that there is no need for the suggested procedure in these cases.

Viewed in light of the standard of review for the motions to reconsider now before us, this contention misses the mark. Furthermore, the magistrate judges explain that the contested hearings are designed to *prevent* the *Neuschafer* situation, not because the cases at bar are in the same posture as was *Neuschafer.* As discussed above at § III(A), and as the magistrate judges suggest, *Neuschafer* does not mandate piecemeal habeas corpus litigation; it only permits it when courts fail to shape and monitor the proceedings.

### D. Adequacy of Existing Procedures

Petitioners contend that the existing abuse of the writ doctrine poses an effective deterrent to the intentional withholding of known claims, citing 28 U.S.C. § 2244(b), Rule 9(b) of the Rules Governing Section 2254 Cases, and *Sanders,* 373 U.S. at 18, 83 S.Ct. at 1078–79. Petitioners contend that the prospective waiver of all unexhausted claims which Judge Alarcon proposes would have the Rule 9(b) analysis conducted in an abstract setting. Instead, petitioners suggest that the proper time to determine whether a successive petition abuses the writ is if and when a subsequent petition is filed. Petitioners also contend that state law doctrines provide additional incentive to file comprehensive petitions and to exhaust all claims expeditiously.[9] They note that federal courts respect state court procedural defaults barring claims, absent a showing of "cause and prejudice." *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Finally, petitioners contend that Local Rule 191(h), providing a stay of execution, means that petitioners cannot justifiably withhold known unexhausted claims from an initial petition in order to avoid having the petition dismissed as mixed under *Rose.* Petitioners argue that because of our local rule, a petitioner could not have a good faith belief that a mixed petition, and the accompanying stay of execution, would be dismissed. Thus petitioners in this district cannot benefit, as did Neuschafer, from the holding in *Tannehill v. Fitzharris,* 451 F.2d 1322 (9th Cir.1971), that a petitioner who omits known unexhausted claims from an initial petition does not deliberately abuse the writ within the meaning of *Sanders* if that petitioner believed in good faith that his claim would be barred until he had exhausted state remedies.

The court finds this argument to be inconsistent with the position, adopted by petitioners at oral argument, that *Neuschafer* creates a right to omit known unexhausted claims and therefore bring successive petitions. More importantly, this contention is essentially irrelevant to the standard of review we must apply. The question before us is not whether the magistrate judges are employing the most efficient case management techniques but whether they act in violation of law. And even were we to consider the wisdom of the magistrate judges' approach, it would not be obvious to us that proper case management is best served by passively waiting until a successive petition is filed before taking steps to avoid abuse of the writ.

## IV. AUTHORITY SUPPORTING THE PROPOSED HEARINGS

■ The court finds the proposed hearings to be well within the magistrate judges' discretion under existing authority and practice.

■ Courts possess substantial inherent powers to control and manage their dockets. *Mediterranean Enterprises, Inc. v. SSangyong Corporation,* 708 F.2d 1458, 1465 (9th Cir.1983). Under its inherent powers a court may exercise supervision of its docket and the litigants before it, and may take a variety of actions in aid of this supervision. *See Ohio River Co. v. Carrillo,* 754 F.2d 236, 238 (7th Cir.1985) (sua sponte dismissal); *Contracting Northwest, Inc. v. City of Fredericksburg,* 713 F.2d

---

**9.** Petitioners cite Policy 3, California Supreme Court Policies Regarding Cases Arising from Judgments of Death (adopted June 6, 1989) (setting forth stringent "timeliness standards" and providing for denial of non-complying petitions); *People v. Jackson,* 10 Cal.3d 265, 269, 110 Cal.Rptr. 142, 514 P.2d 1222 (1973) (court refused to hear petitioner's ineffective assistance of counsel claim: "defendant's failure to raise this issue when he was before us on three separate occasions is inexcusable").

382, 387 (8th Cir.1983) (stay pending arbitration). As part of this inherent authority, it is appropriate for a court to make inquiry concerning a fee arrangement and to protect against conflicts of interest. *In re Michaelson*, 511 F.2d 882 (9th Cir.1975).

In addition, the All Writs Act, 28 U.S.C. § 1651, serves as a "legislatively approved source of procedural instruments designed to achieve 'the rational ends of law.' " *Harris v. Nelson*, 394 U.S. 286, 299, 89 S.Ct. 1082, 1090, 22 L.Ed.2d 281 (1969) (citations omitted).[10] In *Harris*, the Court found that the discovery rules in the Federal Rules of Civil Procedure did not apply to a habeas corpus proceeding. Nonetheless, the Court found that under the All Writs Act the district court had ample authority to develop discovery procedures appropriate to the particular case. The Court emphasized that the writ of habeas corpus should be administered with "initiative and flexibility," *id.* at 291, 89 S.Ct. at 1086, and that in developing tools of procedures appropriate to the case, the district court could look to other procedures and particular rules for guidance by analogy. *Id.* at 294 and 300, 89 S.Ct. at 1087–88 and 1091. (The district court "may utilize familiar procedures as appropriate, whether these are found in the civil or criminal rules or elsewhere in the 'usages and principles of law.' ") (citations omitted). *Id.* at 300, 89 S.Ct. at 1091.

Rule 16 of the Federal Rules of Civil Procedure provides just this sort of guidance and support by analogy for the hearings ordered by the magistrate judges in these cases.[11] Rule 16 authorizes, indeed requires, federal courts to hold pretrial conferences in order to expedite the disposition of cases, to establish control over actions so they do not become protracted due to lack of management, and to improve the quality of trials through more thorough preparation. Fed.R.Civ.P. 16(a)(1), (2), (4). The Rule provides that subjects to be discussed at pretrial conferences may include: "(1) the formulation and simplification of the issues, including the elimination of frivolous claims or defenses; (2) the necessity or desirability of amendments to the pleadings; ... (11) such other matters as may aid in the disposition of the action." Fed.R.Civ.P. 16(c)(1), (2), (11). These purposes appear consistent with those articulated by the magistrate judges in support of the *Neuschafer* hearings which they propose to hold in these two cases. *See Ainsworth*, No. CIV. S–90–329 (December 7, 1990) (order regarding reasons for setting hearing); *Rich*, No. CIV. S–89–823 (December 7, 1990) (order regarding reasons for setting hearing).

The court concludes that its inherent powers, as well as its obligation and authority to achieve "the rational ends of law" are sufficiently broad to support the hearing and inquiry, analogous to Rule 16 proceedings, proposed by the Magistrate Judges here.

Nor does the court find any abuse of authority in the magistrate judges' proposal to question petitioners directly.[12]

**10.** *Accord United States v. New York Telephone Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977) (quoting *Harris*, finding the All Writs Act authorized district court order compelling telephone company to install pen registers upon finding of probable cause); *Barry v. United States*, 528 F.2d 1094, 1101 (7th Cir. 1976) (en banc) (All Writs Act authorizes district courts to order necessary discovery in habeas corpus proceedings).

**11.** We need not, and do not, hold that Fed.R. Civ.P. 16 directly applies to habeas corpus cases. We note that Rule 11 of the Rules Governing Section 2254 Cases provides that " '[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, *may* be applied, when appropriate, to petitions filed under these rules." *Id.* (emphasis added). Similarly, Rule 81(a)(2) of the Federal Rules of Civil Procedure provides that "[t]hese rules are applicable to proceedings for ... habeas corpus ... to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions." As has been recognized, however, "the exact 'fit' of the Federal Rules of Civil Procedure and habeas corpus practice is itself a complex question." *Hillery v. Pulley*, 533 F.Supp. 1189, 1196 (E.D.Cal.1982) (Karlton, J.), *aff'd*, 733 F.2d 644 (9th Cir.1984), *aff'd*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986). See *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969).

**12.** The United States Supreme Court "has insistently said that the power of the federal courts to conduct inquiry in habeas corpus is equal to the responsibility which the writ involves: 'The

Among the purposes of the *Neuschafer* hearing is to assure that *petitioner* understands the need to bring forth all claims and that *petitioner* is satisfied with the appointment of counsel. It will assist the court little in the management of these cases only to make inquiry of present counsel when successive petitions, if any, likely will be filed by different counsel.

It is not at all unusual in civil and criminal cases for the court to make direct inquiry of parties represented by counsel. Indeed, Local Rule 270(f)(1) provides that at settlement conferences "counsel shall be accompanied in person ... by a person capable of disposition," who generally is the party. And when appointing counsel, it is incumbent upon the court to make an inquiry of the party. If a party is entitled to appointed counsel, the court must expressly inform that party of the right and must question the party to determine whether any waiver of the right is knowing and intelligent. *See Carnley v. Cochran,* 369 U.S. 506, 513, 82 S.Ct. 884, 888–89, 8 L.Ed.2d 70 (1962); *United States v. Wadsworth,* 830 F.2d 1500, 1504–05 (9th Cir. 1987). The court's failure to question a criminal defendant about a waiver of the right to counsel requires reversal unless the record reveals that the waiver was knowing and intelligent. *See Hardy v. Lewis,* 834 F.2d 853, 857 (9th Cir.1987).[13]

In the circumstances of the hearings proposed here, the magistrate judges seek to alert the petitioner to a possible waiver of claims that may be found if claims are deliberately withheld for delay. The magistrate judges also seek to exercise supervision over appointed counsel and discover any problems in the attorney client relationship at a point early in the proceeding. These are precisely the types of inquiries that courts routinely make directly of the parties.

## V. ADDITIONAL CONSIDERATIONS

The parties have raised additional concerns regarding the potential costs and security risks of holding the proposed hearings. The court is confident that the magistrate judges will continue to give due regard to security concerns and cost in exercising their discretion to hold hearings of the type ordered in these cases. It may be inappropriate to hold such a hearing in some cases. Similarly, the specific conduct of such a hearing, including the location, may change from case to case in light of cost or security considerations. In their memoranda the magistrate judges have indicated that they will weigh these factors in each capital habeas corpus case in determining whether and in what way to hold a *Neuschafer* hearing.

## VI. CONCLUSION

The parties have failed to demonstrate that any of the numerous reasons stated by the magistrate judges in support of their orders setting the proposed hearings are contrary to law.

For the foregoing reasons, and good cause appearing therefor,

IT IS HEREBY ORDERED that petitioners' motions for reconsideration of the magistrate judges' orders setting hearings are denied.

IT IS SO ORDERED.

---

language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary.' " *Harris v. Nelson,* 394 U.S. 286, 292, 89 S.Ct. 1082, 1087, 22 L.Ed.2d 281 (1969), *quoting, Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963). Although the Court's comment is directed to inquiry into the petitioner's allegations, it is representative of the Court's view that the district court has a wide-range of powers in administering the writ and ensuring that the proceeding

does not "founder in a 'procedural morass.' " *Id.*

**13.** See also Fed.R.Evid. 614(b), which authorizes courts to call and question witnesses. Under the authorization of Fed.R.Evid. 614(b), the court may question a witness, including parties represented by counsel, to clarify his or her testimony or to insure a case is tried fairly. *See, e.g., United States v. Block,* 755 F.2d 770, 775 (11th Cir.1985); *Manchack v. S/S Overseas Progress,* 524 F.2d 918, 919 (5th Cir.1975).